**SAVE THE DUNES COUNCIL et al., Appellants,**

**v.**

**Clifford L. ALEXANDER, Secretary of the Army, Appellee.**

**No. 77–1760.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1978.

Decided Aug. 21, 1978.

Marshall Patner, Chicago, Ill., for appellants.

Anne S. Almy, Asst. U. S. Atty., Department of Justice, Washington, D. C., for appellee.

Before PELL and TONE, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge.

*The Appeal:*

The appellants Save the Dunes Council, Inc. and several individuals (Council) appeal the adverse summary judgment entered by the District Court on May 10, 1977 in their causes for a Writ of Mandamus and a Declaratory Judgment with mandatory injunctive relief from the action or non-action of the Secretary of the Army (Secretary) under 33 U.S.C. § 426i [1] (prevention or mitiga-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 33 U.S.C. § 426i provides:
 "The Secretary of the Army, acting through the Chief of Engineers, is authorized to investigate, study, and construct projects for the prevention or mitigation of shore damages attributable to Federal navigation works. The cost of installing, operating, and maintaining such projects shall be borne entirely by the United States. No such project shall be constructed without specific authorization by Congress if the estimated *first cost* exceeds $1,000,000." (Emphasis added.)

tion of shore damage). We note jurisdiction under 28 U.S.C. § 1291 and affirm.

*Proceedings in the District Court:*

On August 7, 1973, the Council brought suit to compel the Secretary, and through him, the Chief of the Corps of Engineers (Corps) to take remedial action concerning the Corps' harbor improvements at Michigan City, Indiana. The Council's complaint in Count I alleged that the Secretary and the Corps had the duty to prevent and rectify shore erosion damage to the Indiana Dunes National Lakeshore (Dunes) allegedly caused by the harbor structures at Michigan City and that the Council was entitled to a Writ of Mandamus, pursuant to 28 U.S.C. § 1361, to compel the Secretary to modify the harbor structures in prevention of unreasonable shore erosion.

In Count II of the complaint, the Council alleged that the harbor improvements constituted a nuisance under federal common law and that the Secretary abused his discretion, granted under various Acts of Congress, by failing to stop or alleviate the shore erosion of the Dunes caused by the harbor structures. They further alleged that the District Court held jurisdiction to abate the nuisance under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 and 706(1), as well as under federal question jurisdiction, 28 U.S.C. § 1331.

On November 2, 1973, the Corps moved to dismiss, or in the alternative, for summary judgment. On May 10, 1976, the District Court granted the Corps' motion for summary judgment under the provisions of Fed.R.Civ.P. 56 and entered judgment for the Corps on the Council's Count I.[2] The District Court did not deal with the issues under Count II any further than to find:

"[T]he Secretary is currently considering the serious problem of erosion along the [shoreline of the Dunes] in a manner well within the parameters of Title 33.

. . . . .

"[T]he Secretary has properly exercised his discretion by adopting a position with respect to the matter expressed in [Council's] complaint. Since the court is without jurisdiction to order a course of action more favorable to [Council], this cause must be dismissed."

*Facts:*

Michigan City Harbor is located at the mouth of Trail Creek at Lake Michigan, to the east of the Dunes.[3] Development of the Michigan City Harbor (Harbor) began in 1836. Modified several times during the Nineteenth Century, the harbor structures as they now exist were completed about 1910. The structures were rehabilitated in the late 1960's, without modifications. The Harbor has become a major recreational boating center for the southeastern portion of Lake Michigan.

The shoreline to the east of the Harbor experienced accretion in the period 1870–1940. A Michigan City municipal park, containing a public beach and zoo, is located on the accreted area, immediately to the east of the Harbor. The shoreline to the west of the harbor structures, however, has receded over the years. The erosion above referred to in rather extreme proportion extended into the Dunes through the development of the record before us.

The Dunes was created in 1966 under 16 U.S.C. §§ 460u, *et seq.,* "to preserve for the educational, inspirational, and recreational use of the public certain portions of the Indiana dunes and other areas of scenic,

---

The term "first cost" is defined as all costs for investigation, design, and construction incurred subsequent to transmittal of a Reconnaissance Report to the Office of the Chief of Engineers for approval. 33 C.F.R. 263.15(b)(1).

**2.** The lengthy delay between submission of the Corps' motion and decision was apparently occasioned by retirement of the judge originally assigned to the case and reassignment of the case.

**3.** Michigan City Harbor is located at approximately mile 523 on the shoreline; the border of the Dunes is at approximately mile 524, one mile west. The base point for these mile figures is undisclosed. A Northern Indiana Public Service Company installation is located on the intervening land.

scientific, and historic interest and recreational value in the State of Indiana . .."

In 1970, the Town of Beverly Shores, Indiana, located within the Dunes, and the Port Authority of Michigan City requested the Corps to study and take remedial action concerning the erosion experienced along the Dunes pursuant to Section 111 of the Rivers and Harbors Act of 1968, 33 U.S.C. § 426i. The Corps undertook a preliminary study of the erosion occurring to the Dunes and the relationship of such erosion to the harbor structures.

The report on this study, called Section 111 Reconnaissance Report, was issued on October 20, 1971. The report concluded that the harbor structures have contributed to approximately 60 percent of the erosion of the Dunes by interfering with the littoral movement of beach building materials to that shore, with high lake levels and steep waves accounting for the remainder. The Reconnaissance Report recommended preparation of a Detailed Project Report to develop plans for mitigation of the shore damage attributable to the harbor structures. The Corps pursued this recommendation and contracted with the engineering firm of Moffatt and Nichol of Long Beach, California, to conduct a study on the Indiana shoreline erosion.

Meanwhile, pursuant to a National Park Service request, the Corps prepared a plan of interim protection for an area where erosion threatened to undermine an access road several miles west of the Harbor. This project consisted of a rock revetment and called for beach nourishment with some 230,000 cubic yards of sand. In 1973, Congress appropriated 3.1 million dollars to the National Park Service for construction of the emergency protection works. The Corps, acting as agent for the Park Service, contracted for the construction of the interim, emergency shore protection works, and construction commenced in the Fall of 1973.

The Corps has, pursuant to resolutions of congressional committees as late as April 11, 1974, issued a final feasibility report, entitled "Interim Report on Indiana Shoreline Erosion," which recommends authorization of a shore protection project to rebuild the beach west of the Harbor from the Northern Indiana Public Service Company (NIPSCO) property to the existing rock revetment (miles 524 to 526) and to replenish the beach periodically. This plan is designed to mitigate only the erosion caused by harbor structures.

In developing the proposed plan, the Corps considered modification of the harbor structures as an alternative. At the minimum, a detached breakwater and most of the east pier would have to be removed. The Harbor would then lose its function as a harbor of refuge, and increased dredging of the channel would be required. The report states that more extensive removal of improvements would probably be required. The maximum removal plan would result in the loss of a portion of the municipal park to the east of the Harbor and the Harbor outer basin. The NIPSCO power plant, located between the Harbor and the Dunes, would have to be modified.

Construction of the recommended project requires congressional authorization and funding. A draft environmental impact statement for the project has been filed with the Council on Environmental Quality. The report on the recommended project is expected to be submitted to Congress in the next year (1979–80).

*Issues:*

The issues on review are:

1. Whether the Secretary, acting through the Corps, has any peremptory duty under § 426i to take immediate structural modification action to remedy the shore erosion on the Dunes when that erosion is primarily caused by federal navigation improvements, and if so, whether that duty may be enforced through mandamus (Count I); and

2. Whether the Secretary's exercise of discretion is subject to declaratory judgment and mandatory injunctive relief under the APA (Count II).

*Discussion:*

The Council, as private parties, seeks to compel the Corps, by judicial decree, to remedy a situation causing severe damage to a National Park. No issue is raised as to legal standing of the Council.

█ It is manifest that the judiciary cannot compel through a writ of mandamus a federal official to perform any function unless the official is clearly directed by law to perform such a duty. This Court has held that mandamus jurisdiction is present only when a clear, plainly defined, and peremptory duty on the federal defendant is shown and there is a lack of an adequate remedy other than mandamus. *Vishnevsky v. United States*, 581 F.2d 1249 (7th Cir. 1978), citing *City of Highland Park v. Train*, 519 F.2d 681, 691 (7th Cir. 1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976), and *City of Milwaukee v. Saxbe*, 546 F.2d 693, 700 (7th Cir. 1976). The peremptory duty must be either a ministerial one or an obligation to act within a specified range of discretion. *Davis Associates, Inc. v. Secretary, HUD*, 498 F.2d 385, 389 (1st Cir. 1974); *Miller v. Ackerman*, 488 F.2d 920, 921–22 (8th Cir. 1973). Finally, mandamus jurisdiction does not lie to direct the exercise of administrative discretion within its lawful boundaries. *Wilbur v. United States, ex rel. Kadrie*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 74 L.Ed. 809 (1930).

█ Before delving further into the Council's entitlement to a writ of mandamus, it is first necessary to meet the prerequisite for any writ of mandamus, namely: is there a lack of an adequate remedy for the Council's grievances other than mandamus? The Council suggests in their Count II such a remedy by way of declara-

tory and mandatory injunctive relief under the provisions of the APA, §§ 701, *et seq.*[4] The Council contends that the Corps' interim protection work (rock revetment and beach nourishment) was miniscule, and its delay by conducting studies and recommending what to do, rather than taking positive action to modify the harbor structures to prevent further erosion, constitutes unreasonable delay and hence an abuse of the Secretary's discretion authorized under § 426i. The Council relies upon the holding in *Secretary of Labor v. Farino*, 490 F.2d 885, 888–93 (7th Cir. 1973). In fact, the Council contends that the District Court did not reach and deal with the issues under Count II (review under APA) in its memorandum opinion. We and the Council read the memorandum with different sights. It is true that the memorandum does not deal with the issues under Counts I and II separately in an A, B topical fashion; however, we read the memorandum as an ultimate finding of fact and conclusion of law that the Council has just simply not presented on the record any cause upon which relief can be granted under either Count II or Count I.

The Council has misplaced its trust in *Farino* under the facts presented here. In *Farino*, an employer sought APA review of the Secretary's denial of an Alien Employment Certification so that he could continue to employ an alien. Congress had provided that before the Secretary could issue such an employment certificate, the Secretary must find and certify that the alien's entry into the labor market would not adversely affect American labor in various particulars. *Id.* at 887. The Secretary denied the Alien Employment Certification and contended that Congress had committed such

---

4. Section 702 in its pertinent part provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . . *Provided*, That any mandatory or injunctive decree shall specify the Federal officer . . . (by name or by title) . . . .."
Section 706 in its pertinent part provides: "The reviewing court shall—

"(1) compel agency action unlawfully withheld or unreasonably delayed; and
"(2) hold unlawful and set aside agency action, findings and conclusions found to be—
"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

. . . . .

"(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;"

certification to his discretion and that judicial review was forbidden under § 701(a) which provides in part:

> "This chapter applies, . . . except to the extent that—
>
> ". . .; or
>
> "(2) agency action is committed to agency discretion by law."

*Farino* recognizes that the Secretary's decision did not fall within the very narrow exception and held that under the test and standard of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and the "law to apply" (8 U.S.C. § 1182(a)(14)), the Secretary's decision was subject to judicial review under the provisions of the APA. *Farino* then adopts the *Overton Park* standard and procedures for review by the District Court which are:

> "[T]he district court is first required to find whether the Secretary acted within the scope of his authority. As mandated by Section 10(e)(2)(A) of the Administrative Procedure Act, *supra*, his determination must not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' To make such a finding the district court must consider whether the Secretary's decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' Nevertheless, 'the ultimate standard of review is a narrow one,' and the district court may not 'substitute its judgment for that of the agency.' 401 U.S. at 415–416, 91 S.Ct. at 823." 490 F.2d at 889.

There ends *Farino's* succor to the Council. *Farino* puts the Secretary's decision to that test or standard and does not fault the decision, but only deals with a "procedural issue, *viz.*, whether plaintiffs were afforded an adequate opportunity to be heard before the [Secretary]." Id. at 890. Because of an unclear record, *Farino* remanded the cause to the District Court for a determination of that issue.

Furthermore, in this case the District Court did review the Secretary's decision and substantially complied with the *Overton Park* standard and procedure for APA review. It goes without saying that the Council was granted a full due process hearing on its claims before the District Court. The evidence of record was fully considered by the District Court which made the following pertinent findings of fact and conclusions of law:

> "[A]lthough the Secretary has *authority* to perform the acts stated [in § 426i], he is under no *obligation* to take such action.
>
> . . . . .
>
> "Having determined that the Secretary's duties are discretionary in nature, the next question is whether the court may compel the performance of such acts. Although district courts are equipped to command discretionary conduct, the federal official remains the ultimate decision-maker. That is, he may decide to take some form of action prescribed by statute, or he may decide to do nothing at all. A court may interfere only when the official's actions [decision] or inactions [no decision] constitute an abuse of discretion. . . ."

*See Delaware River Joint Toll Bridge Commission v. Resor*, 273 F.Supp. 215, 218 (E.D.Pa.1967), citing *Paramount Pictures v. Rodney*, 186 F.2d 111 (3d Cir. 1951). "The record [3] shows that the Secretary is

> "[3] Since the court has considered materials outside the pleadings themselves, Rule 56, F.R. C.P., shall govern the disposition of this motion."

currently considering the serious problem of erosion along the [shoreline of the Dunes] in a manner well within the parameters of Title 33. In 1970, the Town of Beverly Shores, Indiana, and the Port Authority of Michigan City, Indiana, requested the Army Corps of Engineers to study and remedy the erosion dilemma. The following year the Corps prepared a report entitled, 'Section 111 Reconnaissance Report, Michigan City Harbor, Indiana.' The report was a preliminary study of the effects of harbor structures on the shorelines of Michigan City and Beverly Shores. The study concluded that '[f]urther detailed studies will be required to develop a precise plan of improvement and determine the extent of

actual shore damage attributable to the Federal navigation structure."

■ We agree. The Secretary, acting through the Corps, rather than taking ill-advised precipitous affirmative action in tearing out the harbor structures, has complied with statutory and administrative requirements for well-advised decision-making.

The provisions of the National Environmental Policy Act, 42 U.S.C. §§ 4331, *et seq.,* (NEPA) require the Corps to "utilize a systematic, interdisciplinary approach . . in planning and in decisionmaking . . .." 42 U.S.C. § 4332(2)(A). NEPA further provides for the preparation of an environmental impact statement which, *inter alia,* includes a discussion of alternatives to the proposed action, 42 U.S.C. § 4332(2)(C)(iii); and in cases involving unresolved conflicts concerning alternate uses of available resources, it mandates study and development of appropriate alternatives. 42 U.S.C. § 4332(2)(E). NEPA, of course, applies to erosion mitigation projects undertaken pursuant to the authority of § 426i. 33 C.F.R. § 209.410(e)(2)(vii).

The Council's allegations of unwarranted delay on the part of the Secretary are unfounded. The delay was in fact not only warranted but required by the above-mentioned procedures in reaching a decision as whether to demolish or reconstruct the harbor structures.[5] We are satisfied from the record that the Secretary, acting through the Corps, is acting within his discretion without delay and abuse; and that he is proceeding in a reasonable and responsible manner to develop a feasible plan for the prevention of the extreme Lake Michigan water erosion threat to the Dunes. *See Chromcraft Corp. v. United States EEOC,* 465 F.2d 745, 748 (5th Cir. 1972); and *Buck-*

*eye Cablevision, Inc. v. United States,* 438 F.2d 948, 954 (6th Cir. 1971).

■ Furthermore, the Corps' action to date is not subject to our review as unreasonably delayed or arbitrary and capricious under § 706(1) and (2)(A). Pursuant to 5 U.S.C. § 704, only *final agency actions* are subject to judicial review. In 1974, the Corps' decision-making and planning processes were still ongoing, and as of this date, no recommendation for project authorization has been sent to Congress. The Council's suggestion that the harbor structures be modified is being considered by the Corps as an alternative remedial measure. Hence, there is no final agency action, in the literal sense, upon which review can be predicated.

*Seven-Up Co. v. FTC,* 478 F.2d 755 (8th Cir.), *cert. denied,* 414 U.S. 1013, 94 S.Ct. 379, 38 L.Ed.2d 251 (1973), recognizes exceptions to the finality requirement regarding interim agency actions that violate constitutional immunities or rights and statutory requirements. Manifestly no statutory requirements or constitutional immunities or rights of the Council have been violated by the ongoing action of the Corps in the premises,[6] nor can reasonable delay in a final decision concerning the proper remedy for the erosion be considered a final denial of all relief. *Compare Environmental Defense Fund, Inc. v. Hardin,* 138 U.S.App. D.C. 391, 428 F.2d 1093 (1970).

The Council's cause under federal common law of nuisance has been abandoned on appeal.

We conclude that the record produced in support of the allegations of Count II present no genuine issues as to any material fact and that the Secretary is entitled to a judgment as a matter of law. The District

---

**5.** *See Holmes v. United States Board of Parole,* 541 F.2d 1243, 1247 n.5 (7th Cir. 1976); *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973).

**6.** For this reason, the question of whether the Corps' proposed plan for remedial action is in accordance with Corps' regulations should be

postponed until final action is taken. It should be noted, however, that one of the regulations cited by Council applies to Small Beach Erosion Control Projects, 33 U.S.C. § 426g, and not to § 426i. Projects undertaken pursuant to § 426g involve cost sharing with local governmental units.

Court did not err in granting the summary judgment.

We return to the consideration of the Council's prayer for Writ of Mandamus under the allegations of Count I.

 The Council speaks of § 426i with a forked tongue. Under its Count II (APA review), they speak of the statute as authorizing discretionary decisions to the Secretary, while at the same time and citing a series of statutes they contend under their Count I (Mandamus) that the section imposes a peremptory duty and obligation to decide to modify the harbor structures. None of the statutes cited governing the activities of the Corps nor other federal statutes of general applicability creates such a simplistic, peremptory duty. All statutes cited by Council, except § 426i are inapposite to the erosion problem at issue in this litigation. 33 U.S.C. § 540 merely vests continuing jurisdiction over improvements in navigable waters in the Secretary and the Corps. 33 U.S.C. § 577 authorizes an emergency fund for flood protection works. 33 U.S.C. §§ 426, 426e and 426g do authorize the Corps to undertake small shore and beach restoration projects in conjunction with local governments. But these statutes expressly leave the determination of whether to proceed with such projects to the discretion of the Corps.

 The House Committee Report states that the purpose of § 426i is to enable the Corps to take remedial action if an existing navigation project creates erosion damage. H.Rept.No.1709, 90th Cong., 2d Sess. 58–59 (1968). The report expressly approves the Corps' policy of including erosion mitigation measures in plans for new navigation projects, and describes the bill as a measure to extend that policy to existing projects. Thus, the legislative history shows that § 426i was not enacted to limit the Corps' discretion, but, on the contrary, to permit the Corps to apply its expertise and discretion to the problem of erosion damage caused by existing navigational structures.

Section 426i is applicable to the erosion problem of the Dunes, but Council must bear in mind that the Secretary is limited to the first costs of less than One Million Dollars in any action he may decide to direct in alleviating the erosion problem. The Corps estimates the cost of any reasonably effective erosion prevention course of action at many times that limit. Congress bears the brunt of the problem with well considered expertise and advice of the Corps.

The parties have cited no judicial interpretation or construction of § 426i nor has our independent search found any. We hold that the language of § 426i and the congressional intent in enactment grant and authorize only discretionary decision of action or non-action on the part of the Secretary, acting through the Corps, in the premises. No clear, plainly defined and peremptory duty on the part of the Secretary is spelled out or, by any stretch, to be garnered inferentially upon which a Writ of Mandamus to comply can be predicated.

We conclude from the record presented that there are no genuine issues as to any material fact and the Secretary is entitled to a judgment as a matter of law. The District Court did not err in granting the summary judgment on Count I.

The memorandum opinion of the District Court entered on May 10, 1977, granting the Secretary's motion for summary judgment and the judgment entered thereon are each affirmed.

AFFIRMED.