Juan CERVANTES, Elvia Cervantes, Carlos Cervantes, and Juan Cervantes, Jr., Plaintiffs,

v.

Brian PERRYMAN, Acting District Director of the Immigration and Naturalization Service, and Janet Reno, Attorney General of the United States, Defendants.

No. 96 C 7303.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 10, 1997.

Stanley J. Horn, Raul Villasuso, Jr., Horn & Villasuso, Chicago, IL, for Plaintiffs.

James G. Hoofnagle, Asst. U.S. Attorney, Chicago, IL, for Defendants.

*Order*

ASPEN, Chief Judge.

Plaintiff's objections to Magistrate Judge Ashman's Report and Recommendation of January 24, 1997 are overruled. The Court adopts Magistrate Judge Ashman's Report and Recommendation of January 24, 1997, and denies plaintiff's motion for preliminary injunction (5–1). The status hearing set for February 11, 1997 is stricken.

### REPORT AND RECOMMENDATION

ASHMAN, United States Magistrate Judge.

### I. *Background*

On November 7, 1996, Plaintiffs filed a complaint seeking, *inter alia*, a writ of mandamus to compel the Defendant District Director to adjudicate their applications for suspension of deportation and to grant their applications for employment authorization. This complaint was amended on December 6, 1996 seeking the same relief from Janet Reno, Attorney General, who was added as a Defendant.

The complaint alleges that Plaintiffs, who are of Mexican descent and who have listed their nationality and citizenship as Mexican, entered the United States prior to 1989. The Plaintiffs have several children, including one who was born in the United States and is consequently a United States citizen. The Plaintiffs filed applications for suspension of deportation, pursuant to 8 U.S.C. § 1254(a)(1) and for employment authorization, based on eligibility under 8 C.F.R. § 274a.12(c)(10). On October 31, 1996, the Plaintiffs' applications for employment authorization were denied based on Plaintiffs' alleged failure to establish eligibility under 8 C.F.R. § 274a.12(a) or (c). Additionally, Defendants rejected Plaintiffs' applications for suspension of deportation without written explanation. Plaintiffs allege that Defendants' failure to adjudicate their applications for suspension of deportation was unlawful, arbitrary, capricious and an abuse of discretion. Plaintiffs seek, *inter alia*, an order requiring the Defendants to accept and adjudicate the applications for suspension of deportation, a

permanent injunction barring Defendants from refusing to adjudicate the Plaintiffs' applications, and attorney's fees.

On December 6, 1996, the Plaintiffs filed this motion for a preliminary injunction, asking that the Defendants be enjoined from refusing to accept their applications for suspension of deportation without the Defendants' issuance of an order to show cause and from refusing to grant the Plaintiffs' applications for work authorization. Plaintiffs allege that, without such injunctive relief, they will suffer irreparable harm as a result of the Defendants' refusal to act, including loss of their right to remain in the United States, deprivation of their due process and equal protection rights under the Fifth Amendment, and the inability to obtain a future suspension of deportation after the implementation of the Immigration Reform Act of 1996 on April 1, 1997. Plaintiffs conclude that, while the issuance of an injunction will prevent their irreparable injury, such relief will not cause any loss or injury to the Defendants.

## II. *Analysis*

Before discussing the merits of the case, the Court first addresses two threshold issues: (1) the procedural aspects of this motion and (2) the jurisdictional argument advanced by Defendants. As to the procedural aspects of this motion, the parties waived their rights to present evidence and agreed to stand on the facts as set out in their papers. In light of the absence of any factual disputes, the Court has made its ruling based strictly on the parties' written submissions.

■ With respect to the jurisdictional issue raised by this motion, Defendants contend, pursuant to Section 306(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA") (amending Section 242(g) of the INA), that the Court lacks jurisdiction to hear this case. Section 306(a)(1) amends Section 242 of the INA to provide:

> Exclusive Jurisdiction—Except as provided in this section and not withstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Defendants contend that this section became effective September 30, 1996 by virtue of a technical amendment enacted by Congress on October 11, 1996. Pub.L. 104–302, 110 Stat. 3656. However, this technical amendment did not alter the effective date of the statute but rather, merely amended the language of the effective date provision, Section 306(c)(1). In an example of legislative draftsmanship that would cross the eyes of a Talmudic scholar, Section 306(c)(1) now reads:

> (c) Effective Date—
>
> (1) In general—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under Section 309, except that subsection (g) of Section 242 of the Immigration and Nationality Act (as added by subsection (a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.[1]

After a review of the IIRAIRA provisions governing judicial review, the Court concludes that Section 306(a)(1) does not adversely impact the Court's jurisdiction in this case because the exclusive jurisdiction provision does not become effective until April 1, 1997. In construing this labyrinthine provision of the IIRAIRA, the Court has adopted the interpretation of the statute advanced by

---

1. The unamended section read
    (c) Effective Date—
    (1) In general—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply to all final orders of deportation or removal and motions to reopen filed on or after the date of enactment of this Act and subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection (a)) shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings under such Act.

the court in *Walters v. Reno*, C94–1204C, slip op. at 5–6 (W.D.Wash. Dec. 11, 1996).

In ascertaining the effective date of the exclusive jurisdiction provision, the *Walters* Court started with IIRAIRA Section 309(a) which provides that, in general, the provisions of the Act governing judicial review "take effect on the first day of the first month beginning more than 180 days after the enactment of this Act." C94–1204C, slip op. at 5. The court concluded that, under these terms, the effective date is April 1, 1997. *Id.* While resort to that section would appear to clear up the entire issue, it does not do so since, under Section 306(c)(1), the specific provision governing exclusive jurisdiction "shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings under [the] Act." *Id.* Additionally, the court noted that, under IIRAIRA Section 309(c)(1), the new provisions of the Act regarding judicial review do not apply to aliens who are already in deportation proceedings prior to the effective date of April 1, 1997. *Id.*

In analyzing this morass, the *Walters* court noted that the determination of the effective date under the Act was "unduly complicated" and that the "precise interaction between Sections 309(a)–(c) and 306(c)(1) [was] somewhat unclear." *Id.* However, the court concluded that the IIRAIRA provisions regarding judicial review were to "apply effective April 1, 1997 to the claims of aliens who were not in pending deportation proceedings immediately before April 1, 1997, except that the exclusive jurisdiction provision of the Act would apply effective April 1, 1997 to the claims of all aliens, regardless of whether those claims arise from past, pending or future deportation proceedings." *Id.* at 5–6. Thus, the *Walters* court concluded that the court's jurisdiction in that case would not be limited until April 1, 1997. *Id.*

This Court agrees with the *Walters* court's analysis and thus concludes that the IIRAIRA's exclusive jurisdiction provision does not become effective until April 1, 1997 and therefore does not impact this Court's ability to hear this case. In plain English, the words of the statute which limit the Court's jurisdiction even as to past or pending proceedings do not go into effect until April 1, 1997. Thus, at this moment in time, the Court's jurisdiction is not limited. Having determined that there are no jurisdictional infirmities, the Court now turns to the merits of the case.

■ The Defendants argue that Plaintiffs' motion for a preliminary injunction should be denied because they have failed to establish the prerequisites to injunctive relief. In order to qualify for a preliminary injunction, Plaintiffs must show that: (1) no adequate remedy exists at law; (2) they will suffer irreparable harm without the issuance of a preliminary injunction; (3) the harm Plaintiffs will suffer is greater than any harm that Defendants will suffer if injunctive relief is granted; (4) there is a reasonable likelihood of success on the merits; and (5) the injunction will not harm the public interest. *Brunswick Corp. v. Jones,* 784 F.2d 271 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984). Defendants contend that Plaintiffs are unable to establish the existence of any of the factors required for injunctive relief.[2] The Court reviews each of the five factors in turn.

**A.  *Lack of an Adequate Remedy at Law***

■ The first factor that must be considered is whether the Plaintiff can establish that there is no adequate remedy at law. This requirement is a vestige from the time when there were separate tribunals for legal and equitable relief and equity courts were only empowered to provide relief when no legal remedies were available or when those

**2.** Defendants first attacked the adequacy of Plaintiffs' motion, arguing that the motion is facially deficient because it only alleges the existence of one of the five preliminary injunction factors, namely, irreparable harm. However, while the motion itself only alleges two of the five factors, namely that Plaintiffs will suffer irreparable harm if no relief is granted and that the

issuance of an injunction will not harm Defendants, the Plaintiffs address and present argument on all of the factors for injunctive relief in their memorandum in support of their motion. The Court has chosen to consider the arguments presented in the Plaintiff's brief, in spite of the Plaintiffs' failure to raise all of the injunctive relief factors in their motion.

that were available were ineffective. 11 WRIGHT AND MILLER, INJUNCTIONS § 2944, pp. 392–94 (1973). When the remedy sought at trial is damages, the adequacy of the remedy at law is measured by ascertaining whether the plaintiff will be made whole if he prevails on the merits. *Roland,* 749 F.2d at 386. Where an award of monetary or other legal damages will make the plaintiff whole after trial, an adequate remedy at law exists. In this case, no legal damages could compensate Plaintiffs for the loss of their ability to apply for suspension of deportation and their concomitant ability to remain in the United States. Neither party argued the inadequacy of the legal remedy in any depth; rather, both focused on the issue of irreparable harm. Thus, the Court next turns to this factor.

### B. *Plaintiffs' Irreparable Harm*

■ Plaintiffs contend that they will suffer irreparable harm if injunctive relief is not granted because they will be forever precluded from applying for a suspension of deportation. Plaintiffs contend that, as the result of the enactment of the new immigration legislation (IIRAIRA) which becomes effective on April 1, 1997, they will no longer be eligible to apply for suspension of deportation after that date.

The IIRAIRA alters the requirements for suspension of deportation (referred to as "Cancellation of Removal and Adjustment of Status" under the new Act). Under the old Act, an alien must have been present in the United States for a continuous period of not less than seven years, must have been a person of good moral character and must have been able to show that deportation would result in extreme hardship to the alien, or his spouse, parent or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. 8 U.S.C. § 1254(a)(1). However, under the new Act, the alien must be physically present in the United States for not less than ten years and, in addition to showing good moral character, must be able to show that removal would pose an "exceptional and extremely unusual hardship" to the alien's spouse, parent or child who is a citizen of the United States.

IIRAIRA § 204A(b). Thus, Plaintiffs contend once this statute becomes effective, they will no longer be able to apply for suspension of deportation because, although Plaintiffs meet the old seven year presence requirement, they are unable to meet the ten year requirement imposed under the new Act.

■ In assessing whether the Plaintiffs will suffer irreparable injury as a result of this change in the law, the Court notes that the likelihood of injury must be real, not speculative. *Outboard Marine Corp. v. Liberty Mutual Insurance,* 536 F.2d 730 (7th Cir.1976). There must be a clear and present need for the injunctive relief to prevent some irreparable harm. *Young v. Ballis,* 762 F.Supp. 823, 827 (S.D.Ind.1990). In this case, the Plaintiffs are not facing imminent deportation, nor is there any basis to conclude that deportation proceedings will be brought at all. If no deportation proceedings are ever initiated against Plaintiffs, they will not be harmed by their inability to apply for suspension of deportation. Thus, because Plaintiffs' need for suspension of deportation becomes relevant only when they are faced with deportation, the inability to apply for such relief cannot result in irreparable injury without some showing that it is likely that deportation proceedings will be instituted against the Plaintiffs—a showing Plaintiffs have failed to satisfy. In the absence of such a showing, the likelihood of injury is too speculative to establish a clear and present need for injunctive relief.

Additionally, the likelihood of injury becomes even more speculative in light of the fact that, contrary to Plaintiffs allegations, they will not be forever barred from applying for the relief they seek. While, under the new statute, an alien must have been in the United States for a period of ten continuous years prior to application for suspension of deportation, Plaintiffs allege they came to the United States prior to 1989 and have thus been in this country for at least eight years. Therefore, in a maximum of another two years, the Plaintiffs will once again be eligible to apply for suspension of deportation and if deportation proceedings are not initiated until after the ten year anniversary of Plaintiffs' arrival in this country, they will

once again meet the presence requirement necessary to apply for suspension of deportation. Thus, there is only a narrow window during which Plaintiffs run the risk of being ineligible to apply for suspension of deportation. Because there is absolutely no evidence that deportation proceedings will be initiated against the Plaintiffs at any time, let alone, within the next two years, the Court finds the threat of injury too speculative to conclude that Plaintiffs will suffer irreparable injury if an injunction is not issued.

### C. *Likelihood of Success on the Merits*

■ In addressing the fourth factor, the likelihood of success on the merits, Defendants contend that Plaintiffs cannot succeed on the merits because Plaintiffs are not statutorily entitled to the relief they seek. Defendants contend that, in order to be qualified for a suspension of deportation, an alien must be facing the threat of actual deportation from the United States. Pursuant to 8 U.S.C. § 1254(a)(1), the section under which Plaintiffs seek relief:

> the Attorney General may . . ., suspend the deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
>
> (1) **is deportable** under any law of the United States . . .; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien. . . . (emphasis added).

Defendants argue that the phrase "is deportable" translates into a requirement that the alien must have been charged with and found deportable under some law of the United States by an immigration judge in a deportation proceeding. In the instant case, the Defendants claim that Plaintiffs have not alleged that any deportation proceedings were brought against them, nor have they even alleged facts which would allow the Court to conclude that they could be subject to deportation in the future. Defendants correctly point out that the allegation that Plaintiffs are of Mexican descent does not establish that the Plaintiffs are in the United States unlawfully. Thus, the Defendants conclude that, since the Plaintiffs have failed to show that they have been determined deportable by an immigration judge, they have failed to show that they are "deportable" and are therefore not entitled to apply for suspension of deportation under 8 U.S.C. § 1254(a)(1).

On the other hand, Plaintiffs contend that the phrase "is deportable" as used in Section 1254(a)(1) does not mean that the alien must have been determined deportable by an immigration judge or have had deportation proceedings initiated against him, but rather, only requires that the alien admits that he is, in fact, subject to deportation. Plaintiffs appear to argue that any other condition imposed above and beyond this requirement is unlawful. On the issue of Plaintiffs' nationality and immigration status, the Plaintiffs' pleadings and memoranda allege that they are of Mexican descent. The written submissions never allege that Plaintiffs are illegal aliens or are even subject to deportation for any reason. However, the attorney for the Plaintiffs stated in open court that the Plaintiffs were deportable. Thus, the Plaintiffs conclude that they meet the Section 1254 criteria and should be allowed to apply for suspension of deportation.

■ The Court concludes that the Plaintiffs have not established that they are deportable as that term is used in Section 1254(a)(1). The phrase "is deportable" refers to an alien who has been determined deportable by an immigration judge after deportation proceedings have been initiated. The case, *In Matter of Ching*, is instructive on this point. In *Ching*, the Board of Immigration Appeals construed the phrase "is deportable" as it was used in 8 U.S.C. § 1254(a)(2) (also referred to as § 244(a)(2)). 12 I. & N. Dec. 710 (BIA 1968). The Board noted that this phrase was susceptible to two possible interpretations: (1) that an alien "is deportable" only if he is charged with and found deportable by an immigration judge, or (2) that an alien "is deportable" where the

record establishes that, had deportability been charged, it would have been sustained, even thought no such charge was pending. *Ching,* 12 I. & N. Dec. at 712.

The court noted that deportation was not automatic, but rather, was the culmination of the process set out under Section 242(b) of the Act and that the procedure described in that section was the "sole and exclusive procedure for determining the deportability of an alien." 8 U.S.C. § 1252(b). Thus, because a determination of deportability could arise only from a record made in a proceeding before an immigration judge, the Board concluded that the phrase "is deportable" as used in Section 1254(a)(2) required that the alien be charged and found deportable under one or more of the provisions of that section. 12 I. & N. Dec. at 712.

Consistent with the principle of statutory construction that words used in several places within a statute are construed to mean the same thing, the phrase "is deportable" as used in Section 1254(a)(1) must therefore refer to an alien who has been charged with and found deportable under any law of the United States. Indeed, the court in *Pincilotti v. Janet Reno,* a case similar to the instant case, construed this phrase of Section 1254(a)(1) the same way and concluded that the plaintiffs' admissions of deportability to the Immigration and Naturalization Service ("INS") did not qualify the plaintiffs to apply for a suspension of deportation. No. C–95–2143, slip op., 1996 WL 162980(N.D.Cal. March 11, 1996).

In *Pincilotti,* the plaintiffs notified the Office of Immigration and Naturalization of their illegal status and requested that deportation proceedings be brought against them. No. C–95–2143, slip op. at 2. When the INS refused to institute proceedings, the plaintiffs filed suit seeking, among other things, a writ of mandamus compelling the defendants to comply with their interpretation of the statute and regulations. *Id.* at 3–4. The plaintiffs argued, as does the Plaintiff here, that the term "deportable" as used in Section 244 (8 U.S.C. § 1254) should be properly interpreted to refer to any alien who is in the United States illegally and who is therefore subject to potential deportation. *Id.* at 6–7.

Thus, plaintiffs argued that aliens who admitted their deportability were eligible to apply for suspension of deportation under Section 244, regardless of whether deportation proceedings had been instituted against them or not. *Id.* at 5–7.

In rejecting plaintiffs' proposed interpretation of Section 244 of the statute, the *Pincilotti* court concluded that "it belies common sense that one ought to be able to seek 'suspension of deportation,' the relief provided by Section 244, when the INS has not initiated deportation proceedings in the first place." *Id.* at 7. Relying in part on the *Ching* case, the court held that the term "deportable" as used in Section 244 refers to an alien who has been charged with and found deportable. *Id.*

Noting that the Court must accord broad deference to the agency's construction of a statute when reviewing that agency's interpretation, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), this Court agrees with the holdings of *Ching* and *Pincilotti* and thus concludes that the term "deportable" refers to an alien who has been subject to deportation proceedings and who has been found deportable by an immigration judge. The Plaintiffs in this case have not been subject to deportation proceedings and found deportable by an immigration judge and are therefore ineligible to apply for suspension of deportation under 8 U.S.C. § 1254(a)(1).

The Court notes however, that even if it were sufficient for the alien to simply admit his deportability outside of a deportation proceeding, the Plaintiffs, make no allegations in their written submissions that they are in this country illegally and are therefore deportable. While counsel for the Plaintiffs stated during oral argument that his clients were in fact deportable, he did not state why this was so, nor did he refer to any law which would support this contention. Counsel for the Plaintiffs admitted to no facts from which the Court might conclude that his clients could be subject to deportation. The Court therefore has no evidence before it that would permit the Court to conclude that the Plaintiffs are deportable. Thus, even under

the interpretation of the statute advanced by the Plaintiffs, they still do not qualify for the relief they seek.

Because the Plaintiffs have not been found deportable by an immigration judge, they are not entitled to apply for suspension of deportation under Section 1254(a)(1). Without a properly filed application for suspension of deportation, the Plaintiffs are also not qualified for work authorization under 8 C.F.R. § 274a.12(c)(10). Thus, unless the Court is able to compel the Defendants to issue an order to show cause, the Plaintiffs will be unable to prevail on the merits. Consequently, the Court next turns to an analysis of this Court's ability to compel the Defendants to issue an order to show cause.

An order to show cause is a document brought by various INS officers which sets forth the factual allegations and charges of deportability against an alien. The filing of such an order initiates deportation proceedings. 8 C.F.R. § 242.1. The decision to issue such an order is a matter of prosecutorial discretion, essentially equivalent to the decision to initiate a criminal prosecution. *See Cabasug v. I.N.S.*, 847 F.2d 1321, 1324 (9th Cir.1988); *Pincilotti v. Reno*, No. C-95-2143, slip op., 1996 WL 162980 (N.D.Cal. March 11, 1996).

The only limitation that may be imposed on the exercise of prosecutorial discretion is that it may not be based on impermissible standards such as race, religion or other arbitrary standards. *See Wayte v. United States*, 470 U.S. 598, 607-08, 105 S.Ct. 1524, 1530-31, 84 L.Ed.2d 547 (1985). In this case, there is no charge of selective prosecution, only the lack of prosecution. Additionally, there is no allegation of selective non-prosecution, as there was in the *Pincilotti* case. Because the Defendants' failure to prosecute Plaintiffs is not based on any impermissible considerations, the Court has no power to compel the Defendants to issue an order to show cause, as this decision rests solely within the discretion of the Attorney General.

*See Pincilotti v. Reno*, No. C-95-2143, slip op., 1996 WL 162980 (N.D.Cal. March 11, 1996). Consequently, as discussed earlier, the Plaintiffs cannot prevail on the merits and the fourth injunctive relief factor is not satisfied.

The above arguments addressed the Plaintiffs' inability to apply for the relief sought under the terms of the statute. In addition to stating this argument from the perspective of the Plaintiffs' statutory inability, the Defendants also restate this argument from the perspective of their statutory inability to provide the relief sought. Defendants contend that Plaintiffs cannot succeed on the merits because neither of the parties named by Plaintiffs has the power to carry out an order to accept and/or adjudicate Plaintiffs, applications. The Court may not issue a writ of mandamus ordering a federal official to perform any function that the official is not clearly directed by law to perform. *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir.1978).

Here, the only party with the power to accept and adjudicate an application for suspension of deportation is the immigration judge, and therefore, the Court may not order the District Director to accept or adjudicate such an application. *See* 8 C.F.R. §§ 242.8, 242.17, 244.1. Additionally, the Court may not order the Director to grant the Plaintiffs' application for work authorization because one of the statutory prerequisites to qualification for work authorization, namely a properly filed application for suspension of deportation,[3] is missing in this case.

While the Attorney General is statutorily empowered to adjudicate applications for suspension of deportation, the Attorney General has delegated this power to the immigration Judge, a legitimate delegation of her authority. *See* 8 C.F.R. § 242.17 (1995). Thus, the Court cannot order the Attorney General to adjudicate this application. Additionally, the Court cannot compel the Attorney General to grant the Plaintiffs' applica-

---

3. Plaintiffs' application for suspension of deportation is not properly filed in this case because, as discussed earlier, Plaintiffs have not been determined deportable by an immigration judge and are therefore not qualified to apply for suspension of deportation under the terms of 8 U.S.C. § 1254(a)(1).

tion for employment authorization because, under 8 C.F.R. § 274a.13(a)(1), the District Director is given the sole authority to grant such applications, once the prerequisites are met.

Thus, the Plaintiffs are unable to prevail on the merits for the additional reason that none of the parties named by the Plaintiffs are empowered under the statute and regulations to give the relief sought in this case.

### D. *Harm to the Defendants and the Public Interest*

■ With respect to the third and fifth factors, the Defendants contend that the harm to the INS and the public interest that would accrue if the Court grants the Plaintiffs' motion for an injunction militates against such an order. Defendants assert that granting the preliminary injunction in this case would subvert the laws and regulations governing applications for suspension of deportation by forcing the District Director or the Attorney General to accept and adjudicate applications over which neither has jurisdiction by regulation or statute. Defendants contend that the only way the Plaintiffs could justify such a result is to allege and prove that the statute and regulations are so defective or inconsistent with congressional intent that they should be set aside. However, Defendants point out that Plaintiffs have neither alleged nor proved the above.

Although Plaintiffs made no allegations regarding the unconstitutionality of the statute or regulations in their motion or complaint, they argued in their memoranda and at oral argument that the regulations have become unconstitutional in their application as a result of the pending changes instituted by the Immigration Reform Act. Plaintiffs contend that the regulations barring them from filing for suspension of deportation until after deportation proceedings have been initiated against them [4] deny them their right to Due Process and that the Attorney General's continued adherence to these regulations in light of the impending changes in the law which will adversely affect their ability to obtain the relief sought constitutes an abuse of discretion. However, the Plaintiffs have supplied no case law, cogent arguments, and/or proof on this subject, nor even discussed the standard used in reaching a decision to set aside regulations promulgated by an administrative body.

■ This Court is not responsible for doing the "lawyering" in this case and therefore will not engage in an expedition to ferret out the Plaintiffs' constitutional arguments and the case law to support them. *See Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 230 (7th Cir.1992) (stating that the court is not equipped to act as an auxiliary lawyer for a party to an appeal). When the Plaintiff fails to make a "minimally complete and comprehensible argument for each claim, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation." *Luddington,* 966 F.2d at 229. Where competent attorneys are before the Court, as they are in this case, and not even a single case is cited in support of the alleged unconstitutionality of these regulations, the Court will assume that the dearth of legal support is directly attributable to the weakness of the argument rather than to the indolence of the attorneys. Put another way, the status of the record is insufficient to support a declaration that the regulations are either unconstitutional or unconstitutional as applied and this Court will not find the regulations at issue here unconstitutional as applied simply because Plaintiffs baldly assert that it is so.

In light of this Court's refusal to set aside the regulations in dispute here, the Court agrees that the issuance of an injunction compelling the Defendants to accept and adjudicate the Plaintiffs' applications would subvert the laws and regulations governing the procedure germane to these applications. Therefore, the Court concludes that the harm to the Defendants and the public interest that would result from the issuance of this injunction outweighs the harm that will accrue to the Plaintiffs if no such relief is granted.

---

4. *See* 8 C.F.R. § 242.17 (1995) (application is to be made to the immigration judge during deportation hearing).

### III. *Conclusion and Recommendation*

The Court concludes that the Plaintiffs have failed to satisfy any of the factors required for injunctive relief. For all of the foregoing reasons, the Court recommends that the Plaintiffs' motion for a preliminary injunction be denied.