**Luis Ferando ALVIDRES–REYES, et al., Plaintiffs,**

v.

**Janet RENO, et al., Defendants.**

**No. EP–97–CA–122.**

United States District Court, W.D. Texas, El Paso Division.

Sept. 9, 1997.

As Corrected Dec. 2, 1997.

Joseph J. Rey, Sr., El Paso, TX, for Plaintiffs.

Magdalena G. Jara, Asst. U.S. Atty., El Paso, TX, R. Barry Robinson, Asst. U.S. Atty., Austin, TX, Ethan B. Kanter, U.S. Dept. of Justice, Civil Div., Washington, DC, for Defendants.

### AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

FURGESON, District Judge.

### INTRODUCTION

Currently pending before the court is Defendants' Motion to Dismiss the Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed on May 29, 1997. A hearing on the Motion was held in El Paso, Texas, on July 31, 1997. A motion to dismiss "may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Meadowbriar Home for Children,*

*Inc. v. Gunn,* 81 F.3d 521, 529 (5th Cir.1996) (quoting *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir.1995)). The court must construe all of the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint *Id.* (citing *La Porte Constr. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254, 1255 (5th Cir.1986)). Having considered the Motion, oral argument on the Motion and the relevant case law, the court finds that Plaintiffs have failed to state a claim on which relief;an be granted. Because the court finds that Plaintiffs' complaint may be dismissed under Rule 12(b)(6), it will not consider Defendants' jurisdictional arguments.

## BACKGROUND

Plaintiffs are illegal aliens who have resided in the United States for at least seven years. They have filed suit in this court seeking a writ of mandamus against the named Defendants. Plaintiffs seek to have the court order the Defendants to accept and/or adjudicate their applications for suspension of deportation. Section 244(a) of the INA vested, and § 240A now vests, discretion in the Attorney General to suspend an order of deportation or exclusion[1] if certain enumerated factors are present. Section 244(a) was codified in 8 U.S.C. § 1254(a); § 240A is codified in 8 U.S.C. § 1229b.

The Attorney General has delegated her discretionary powers to grant relief from removal to immigration judges. Thus, not only does an immigration judge issue orders of removal, he also determines eligibility for suspension of removal. In this case, then, when the court talks about the Attorney General exercising discretion under either § 244(a) or § 240A, the court is, in reality, referring to an immigration judge.

Plaintiffs, only one of whom is actually in deportation proceedings, have applied to the United States Immigration and Naturalization Service ("INS") for relief from deportation. According to Plaintiffs' attorney, all of the Plaintiffs have asked the INS to institute deportation proceedings against them, so that they can apply for relief from deportation. Alternatively, Plaintiffs have requested

that the INS process their applications for suspension of deportation. The INS has refused both requests. Plaintiffs now ask this court to compel the INS to perform its law enforcement duties. This the court cannot do.

■ Under the separation of powers doctrine, courts must be careful not to interfere in the workings of the other two branches of government. Courts do not have the inherent right or the necessary expertise to micromanage the actions of either branch. Where, for example, the President is given discretionary authority to execute his law enforcement duties, it is not for the courts to prod the President into action. Were it otherwise, the executive and judicial branches of government would no longer be co-equal. Rather, unelected judges would be playing the role of "Superexecutive," with the capability to review and reject every decision of the President. Our Constitution does not contemplate such a role for the judiciary.

Every case, of course, involves human beings with human concerns, and the court is not unmindful of the plight of the Plaintiffs. Although they either entered the country illegally or overstayed, they have apparently lived here for over seven years, otherwise abiding by our laws, contributing to our economy and creating a new life for themselves. Under prior law, seven years of residence allowed an alien to claim eligibility for suspension of deportation, upon a showing of extreme hardship to the alien or a close family member. Under the new law, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), an alien must now wait ten years to claim such eligibility, and then only upon a showing of exceptional and extremely unusual hardship to an alien's spouse, parent or child, who is either a citizen or a permanent resident.

Thus, after President Clinton signed the IIRIRA, increasing the seven-year period to ten years and tightening the standards for suspension of deportation, anxiety among immigrants in the southern border regions of this country increased dramatically. By the stroke of a pen, people like Plaintiffs became

---

**1.** The two terms are now jointly referred to as "removal." Thus, the immigration judge now

issues an "order or removal."

more vulnerable to deportation, where they had not been so vulnerable before. This lawsuit is thus a product of such anxiety. Regardless of such anxiety, however, Congress had the right to change the law and, in this case, the law is clear: Plaintiffs cannot obtain the relief they seek from this court.

When illegal aliens come to this country illegally or overstay their visas, they are considered deportable. As was earlier noted, however, even if an alien is found to be deportable, he or she could still be granted relief from deportation under newly enacted 8 U.S.C. § 1229b.[2] As is discussed in more detail below, an illegal alien is completely ineligible from consideration for relief either under the old § 1254 or the new § 1229b unless the alien is first found to be deportable by an immigration judge. It is also the immigration judge, by delegation of authority from the Attorney General, who makes the eligibility determination under § 1229b. An immigration judge may not consider an alien's eligibility for relief under § 1229b until deportation proceedings have been commenced. Deportation proceedings can only be commenced, however, upon the filing of an order to show cause, usually by the INS District Director. It is this step that Plaintiffs seek the court to compel. Plaintiffs request the court to order the INS to begin deportation proceedings by issuing orders to show cause for all of them. Plaintiffs also seek to have the court declare that they are otherwise eligible for relief under the now ·repealed § 1254. Because Plaintiffs have failed to state a claim on which relief can be granted, the court is of the opinion that Defendants' Motion to Dismiss should be granted.

## ELIGIBILITY FOR SUSPENSION OF DEPORTATION

■ Plaintiffs seek to have the court order the INS to accept and/or process their applications for suspension of deportation. However, because Plaintiffs have not been found to be deportable by an immigration judge, they are not entitled to apply for suspension of deportation under § 1254(a)(1).[3]

---

2. Because the analysis is the same under either old § 1254 or new § 1229b, unless otherwise noted, the court uses the two sections interchangeably. Plaintiffs maintain that because they filed suit one day before the effective date of IIRIRA their claims are governed by § 1254. In reality, Plaintiffs' claims are governed by neither § 1254 nor § 1229b. This is because none of them have been found to be deportable by an immigration judge. The court refers to these sections solely to address the issue of Plaintiffs' present day ineligibility for the relief sought.

3. For purposes of this discussion, the court will analyze Plaintiffs' claims under § 1254(a)(1), although the analysis would be identical under § 1229b. Both sections read as follows:

§ 1254. Suspension of deportation

(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in subparagraph (B) or (D) of section 1251(a)(4) of this title) who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

§ 1229b. Cancellation of removal; adjustment of status

(a) Cancellation of removal for certain permanent residents The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien-

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

(b) Cancellation of removal and adjustment of status for certain nonpermanent residents

(1) In general The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period; (C) has not been con-

The court reaches this conclusion after carefully reviewing the analysis of this exact question by an Illinois district court in *Cervantes v. Perryman*, 954 F.Supp. 1257 (N.D.Ill.1997). *Cervantes* involved a suit by illegal aliens against Janet Reno and INS District Director Perryman. The plaintiffs sought an order from the court requiring the defendants to accept and adjudicate their applications for suspension of deportation and a permanent injunction barring defendants from refusing to adjudicate the plaintiffs' applications. *Id.* at 1259–60. The district court first found that it had jurisdiction over plaintiffs' claims. Next, it considered plaintiffs' eligibility for injunctive relief. The court set out a five part test which plaintiffs had to meet in order to qualify for a preliminary injunction. *Id.* at 1260. One of the prongs of the test required plaintiffs to prove that they had a reasonable likelihood of success on the merits. *Id.* It is in the context of analyzing this prong that the *Cervantes* court found the plaintiffs ineligible for relief under § 1254(a)(1). Because relief under § 1254(a)(1) was available to aliens who were deportable, the court focused on what was meant by the term "is deportable." After reviewing the arguments put forth by both sides, the court concluded that the plaintiffs had not established that they were deportable as that term is used in § 1254(a)(1). Wrote the court:

> The phrase "is deportable" refers to an alien who has been determined deportable by an immigration judge after deportation proceedings have been initiated. The case, *In re: Ching*, 12 I. & N. Dec. 710, 1968 WL 14091 (BIA 1968), is instructive on this point. In *Ching*, the Board of Immigration Appeals (BIA) construed the phrase "is deportable" as it was used in 8 U.S.C. § 1254(a)(2). The Board noted that this

phrase was susceptible to two possible interpretations: (1) that an alien "is deportable" only if he is charged with and found to be deportable by an immigration judge, or (2) that an alien "is deportable" where the record establishes that, had deportability been charged, it would have been sustained. *Ching*, 12 I. & N. Dec. at 712. The court noted that deportation was not automatic, but rather, was the culmination of the process set out under § 242(b) of the [Immigration and Nationality] Act and that the procedure described in that section was the "sole and exclusive procedure for determining the deportability of an alien." 8 U.S.C. § 1252(b). Thus, because a determination of deportability could arise only from a record made in a proceeding before an immigration judge, the Board concluded that the phrase "is deportable" as used in Section 1254(a)(2) required that the alien be charged and found deportable under one or more of the provisions of that section.

*Id.* at 1263–64. The *Cervantes* court then applied the principle of statutory construction that words used in several places within a statute are construed to mean the same thing, and found that the phrase "is deportable" has the same meaning in § 1254(a)(1) as in § 1254(a)(2). *Id.* at 1264.

The *Cervantes* court fully adopted the holding in *Ching* that "deportable" refers to an alien who has been subject to deportation proceedings and who has been found to be deportable by an immigration judge. *Id.* It noted that courts must accord broad deference to an agency's construction of a statute when reviewing that agency's interpretation. *Id.* (*citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81

> victed of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title; and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
>
> Two major differences between the sections should be noted. First, § 1254(a)(1) required an alien to show only 7 years of residence in this country prior to claiming eligibility for suspen-

> sion of deportation. Newly enacted § 1229b, however, requires the alien to have resided in this country for a continuous period of 10 years. Second, § 1254(a)(1) required the Attorney General to find, among other things, that deportation would result in "extreme hardship" to the alien or a close family member before granting relief Section 1229b, on the other hand, requires the Attorney General to find that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

L.Ed.2d 694 (1984)). This court is in complete agreement with the holding in *Cervantes.* What this means, then, is that since the Plaintiffs in this case have not been made subject to a deportation proceeding and found deportable by an immigration judge, they are ineligible to apply for suspension of deportation relief under § 1254(a)(1).

■ As to the one Plaintiff currently undergoing deportation proceedings before an immigration judge, he is likewise ineligible for any relief from this court. The Plaintiff is in the proper forum to submit his application for suspension of deportation, which may be considered by the immigration judge if he is otherwise found to be deportable. This court certainly cannot compel the immigration judge to review that Plaintiff's application, much less grant it. Neither can the court issue a writ of mandamus against any of the Defendants, ordering them to process Plaintiffs' applications for suspension of deportation. As has been established, those applications may only properly be processed by an immigration judge. The court cannot issue a writ of mandamus ordering a federal official to perform any function that the official is not clearly directed by law to perform. *See Save the Dunes Council v. Alexander,* 584 F.2d 158, 162 (7th Cir.1978). The question remains, however, that even though the court cannot order Defendants to process Plaintiffs' applications, can the court at least order them to begin deportation proceedings so that the Plaintiffs could properly present their applications to an immigration judge? The answer to this question is no.

## WRIT OF MANDAMUS

■ Plaintiffs have premised this court's subject matter jurisdiction over their claims under the Mandamus Act, 28 U.S.C. § 1361. The Mandamus Act vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an appropriate remedy "only when the plaintiff's 'claim is clear and certain and the duty of the officer is ministe-

rial and so plainly prescribed as to be free from doubt.'" *Giddings v. Chandler,* 979 F.2d 1104, 1108 (5th Cir.1992) (quoting *Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179 (9th Cir.1983)); *see also United States v. United States Dist. Court, S. Dist. of Texas,* 506 F.2d 383, 384 (5th Cir.1974) (Plaintiff must show a "'clear and indisputable' right to the extraordinary writ."). Thus, mandamus is not available to review the discretionary acts of officials. *Giddings,* 979 F.2d at 1108 (citing *Green v. Heckler,* 742 F.2d 237, 241 (5th Cir.1984)). As the following discussion will show, the Attorney General has complete discretion in issuing orders to show cause.[4]

The Attorney General has primary responsibility for enforcing the statutes requiring the deportation of persons who are not lawfully in the United States. *Johns v. Dept. of Justice,* 653 F.2d 884, 889 (5th Cir.1981). An alien is deportable if he has entered the United States unlawfully without an immigrant visa, 8 U.S.C § 1251(a)(1)(B), and for a number of other reasons. *See, e. g.,* 8 U.S.C. § 1251. Aliens who are determined to be deportable, "shall be deported" upon the order of the Attorney General. 8 U.S.C. § 1251(a). The Attorney General's responsibility in this regard is akin to her responsibility for enforcing the criminal laws: in both situations, she has discretion to refrain from instituting proceedings even though grounds for their commencement may exist. *Johns,* 653 F.2d at 889 (citing C. GORDON & H. ROSENFIELD, IMMIGRATION LAW AND PROCEDURE § 5.3e(1) (1981)). The Attorney General discharges her responsibility for enforcing the deportation laws through the INS, a division of the Department of Justice, to which she has delegated many of her responsibilities under the immigration laws. *See* 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1 & 103.1. The District Director of the INS, therefore, normally makes the decision to institute deportation proceedings. *Johns,* 653 F.2d at 889. An immigration judge (formerly called a special inquiry officer) then conducts proceedings to determine the alien's deportability. *Id.* (citing 8 U.S.C. § 1252(b)).

---

4. An order to show cause is a document brought by various INS officers, through delegation of authority by the Attorney General, which sets forth the factual allegations and charges of de-

portability against an alien. The filing of such an order initiates deportation proceedings, 8 C.F.R. § 242.1.

Proceedings before the immigration judge are the "sole and exclusive procedures for determining the deportability of an alien." *Id.* (citing same section). The immigration judge is empowered to make all decisions necessary to dispose freely of the case and may order that the alien be deported, that the proceedings be terminated favorably to the alien, or that discretionary relief should be afforded. *Id.* The immigration judge's order is final, subject, of course, to further administrative and eventual judicial review. *Id.* Finally, even though an alien may be deportable, and may have even conceded deportability, deportation is not the inevitable consequence of unauthorized presence in the United States. *Id.* The Attorney General is given discretion by express statutory provisions to ameliorate the rigidity of the deportation laws. *Id.* The *Johns* court, for instance, noted numerous situations where the Attorney General may take actions short of instituting deportation proceedings. *Id.* at 888–89.

Accordingly, because the Attorney General has complete discretion in issuing orders to show cause, it would be improper for this court to issue a writ of mandamus directing Defendants to institute deportation proceedings. Having found that Plaintiffs cannot recover as a matter of law, the court is of the opinion that their complaint should be dismissed. Therefore,

It is ORDERED that Defendants' Motion to Dismiss the Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed on May 29, 1997, be GRANTED.