MATTER OF CHING

In Deportation Proceedings

A-6154994

*Decided by Board April 4, 1968*

Since the phrase "is deportable", as used in section 244(a)(2) of the Immigration and Nationality Act, as amended, relates to an alien who has been charged and found deportable under one or more of the paragraphs of section 241(a) of the Act enumerated in section 244(a)(2), respondent, who has been convicted of a narcotics violation but is not charged nor found deportable under section 241(a)(11), is statutorily eligible for suspension of deportation under section 244(a)(1), as amended, where he is charged with deportability on grounds encompassed within section 244(a)(1).

CHARGES:

Warrant: Act of 1924—No immigration visa.

Act of 1929—Reentered within one year of arrest or deportation.

ON BEHALF OF RESPONDENT: Haskell R. Barst, Esquire
84 William Street
New York, New York 10038

The respondent, a native and citizen of China, has been found deportable on the above stated charges. An order entered by the special inquiry officer on January 8, 1968 grants the respondent suspension of deportation pursuant to the provisions of section 244(a)(1) of the Immigration and Nationality Act. The case has been certified to the Board of Immigration Appeals for final decision of the legal question involved in the respondent's eligibility for suspension of deportation.

Discussion as to deportability: The respondent, a married male alien, 55 years of age, last entered the United States at the port of New York on March 6, 1952. He was admitted under section 3(5) of the Immigration Act of 1924 as a member of the crew of the SS "Simeon Reed" for a temporary period of shore leave not to exceed 29 days. He testified that at the time of his entry, it was his intention to remain in the United States permanently and that he was not in possession of an immigration visa. Prior to the respondent's entry on

March 6, 1952, he had been arrested and deported through the port of Newport News, Virginia on January 15, 1952. The evidence of record affirmatively establishes the respondent's deportability as charged in the warrant of arrest issued on April 21, 1952.

**Discussion as to eligibility for suspension of deportation:** The respondent has applied for suspension of deportation under the provisions of section 244 of the Immigration and Nationality Act. The application raises the issue of whether the respondent's eligibility for suspension of deportation should be determined under the provisions of paragraphs (1) or (2) of section 244(a)(1) of the Act. The special inquiry officer concludes that as a matter of law the respondent is eligible for suspension of deportation under the provisions of section 244(a)(1) of the Act. He has certified his conclusion on this issue to the Board of Immigration Appeals for final decision.

The warrant of arrest issued on April 21, 1952 charges that the respondent is deportable under the provisions of the Act of May 26, 1924 as an immigrant not in possession of a valid immigration visa and the acts approved March 4, 1929 and February 5, 1917, in that he is an alien who had been arrested and deported and who reentered the United States before the expiration of one year following his deportation. The aforestated charges are not enumerated in section 244(a)(2) of the Immigration and Nationality Act but are encompassed within section 244(a)(1).

There is evidence of record, however, that the respondent was convicted on two occasions in 1945 for violation of narcotic laws relating to possession, receiving and importing narcotics (Ex. 4 of File 0801–2566, hearing of October 2, 1945 entered as Ex. 5 in the hearing of May 28, 1952). He was committed to the United States Public Health Service Hospital at Lexington, Kentucky to serve a two-year sentence. During a deportation hearing accorded the respondent on October 2, 1945 at the Public Health Service Hospital in Lexington, Kentucky, he was found to be "addicted to the use of narcotic drugs, and . . . not a dealer in or peddler of such drugs." It appears that the respondent has been cured of his addiction. The charge in the warrant of arrest issued on September 18, 1945 and predicated on the respondent's narcotic convictions was not sustained.

Section 244(a)(1) of the Act provides for the suspension of deportation of an alien who "*is deportable* under any law of the United States except the provisions specified in paragraph (2) of this sub-section . . ." Suspension of deportation under paragraph (2) of section 244(a) is limited to aliens who are deportable as criminals, anarchists, prostitutes and includes within its provisions an alien who "*is deportable*" under section 241(a)(11) of the Act as a narcotic

violator (emphasis supplied). The issue with regard to whether the respondent's deportation may be suspended under section 244(a)(1) depends upon an interpretation of the phrase "is deportable" as used in section 244(a)(2). The question before us is whether the phrase "is deportable" means that an alien is to be considered within section 244(a)(2) only if he is charged with and found deportable as an alien within one of the classes of aliens mentioned in paragraph (2) of section 244(a) or does the quoted phrase require an application for suspension of deportation to be considered under paragraph (2) where the record establishes that had deportability been charged under one or more of the specified provisions of section 244(a)(2), it would have been sustained but no such charge was in the warrant of arrest, the order to show cause or lodged during the course of the hearing.

The deportation process is not automatic. The procedure prescribed under section 242(b) of the Act "shall be the sole and exclusive procedure for determining the deportability of an alien." An alien within the United States, unlike one applying for entry at the border, is entitled to the full benefits of procedural due process in accordance with the Fifth Amendment to the Constitution. *Sung v. McGrath*, 339 U.S. 33, 94 L. Ed. 616 (1950); *Chew v. Colding*, 344 U.S. 590, 97 L. Ed. 576 (1953).

Section 244(a)(2) requires that an alien be one who "is deportable." 8 CFR 242.14(a) provides "*A determination of deportability* shall not be valid unless it is found by clear, unequivocal and convincing evidence *that the facts alleged as grounds for deportation are true*" (emphasis supplied). Section 242(b) commands that determination of deportability may emerge only from a record made in a proceeding before a special inquiry officer. The regulations (8 CFR 242), promulgated pursuant to section 242 of the Act provide, *inter alia*, that an alien must be furnished with notification of the charge against him, must be given an opportunity to defend against it and an application for suspension of deportation "under this section . . . shall not be held to constitute a concession of . . . *deportability* in any case in which the respondent does not admit his . . . *deportability*" (8 CFR 242.17(d)) (emphasis supplied).

There is no charge or ground for deportation lodged against the respondent in this proceeding relating to his conviction for a violation of the narcotic laws. It is our conclusion, based upon the foregoing, that the phrase "is deportable" as used in section 244(a)(2) of the Act, as amended, relates to an alien who has been charged with and found deportable on one or more of the provisions of section 241 of the Act enumerated within section 244(a)(2). Since the respondent has been charged with and found deportable on charges encompassed

712

within section 244(a) (1) of the Act, as amended, his application for suspension of deportation will be considered under that subsection.

We next turn to whether the respondent is eligible for and merits the grant of suspension of deportation under section 244(a) (1) of the Act. There is affirmative evidence of record that the respondent has been physically present in the United States since his last entry on March 6, 1952. He originally entered the United States in December 1944 as a member of the crew of the SS "Malvena." Following this entry, he was deported through the port of New York on January 18, 1946. He reentered the United States in April of 1946 as a crewman and was thereafter arrested and deported pursuant to law through the port of Newport News, Virginia on January 14, 1952. It is alleged that the respondent maintained a residence in New York during the period 1944 to 1952. We conclude that the respondent has the requisite period of continuous physical presence in the United States as contemplated by section 244(a) (1) of the Immigration and Nationality Act.

A report of an investigation, dated July 28, 1967 (Ex. R-4), is favorable to the respondent. A current check of the records of the New York City Police Department, the Bureau of Narcotics, the Bureau of Criminal Identification, the Federal Bureau of Narcotics of New York City, the United States Customs and other agencies developed no record of the respondent since his conviction for the possession of narcotics in 1945. The respondent has submitted letters from his employer and from a benevolent association which state that the respondent has a good reputation among his fellowmen and that he is a thoroughly capable, dependable and honest employee. We conclude that the respondent has been a person of good moral character for the period required by section 244(a) (1) of the Act.

The respondent is now 55 years of age. He married his second wife, a lawful permanent resident alien, on June 10, 1965. The respondent was a widower prior to his second marriage. The respondent and his wife have a joint savings account amounting to over $18,700. He is employed as a cook in a restaurant in New York City and earns $125.00 per week. The respondent's wife is employed as a sewing machine operator and earns $50.00 per week. There are no relatives of either the respondent or his wife residing in the United States. He has a sister in Singapore and a brother whose whereabouts are unknown. There are no living children from either of the respondent's marriages.

The respondent testified that if he were deported from the United States, he would be unable to find work to support himself and his wife. He further testified that he has become adjusted to the manner

713

of living in the United States and could not adjust elsewhere as he has maintained a residence in this country for more than 20 years. The respondent's wife testified that if her husband were deported, there would be no one to take care of her as she is now 54 years of age.

The respondent testified that he has submitted annual address reports as required by the alien registration provisions of the immigration laws, that he has never been the recipient of public or private relief or assistance, that he is opposed to communism and that he could not depart from the United States to obtain an immigration visa because he has never acquired residence in any country. We conclude on the basis of the foregoing that the respondent's deportation would cause him extreme hardship within the meaning of section 244(a)(1) of the Immigration and Nationality Act. We affirm the order entered by the special inquiry officer granting suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, as amended. An appropriate order will be entered.

We note in passing that the respondent has been physically present in the United States for a continuous period of more than ten years; has been a person of good moral character during this period and his deportation would result in extreme hardship to his lawful resident alien wife. Even if we were considering the application under the more stringent provisions of section 244(a)(2), we would suspend the respondent's deportation.

ORDER: It is directed that the order entered by the special inquiry officer granting the respondent suspension of deportation under the provisions of section 244(a)(1) of the Immigration and Nationality Act, as amended, be and the same is hereby affirmed.