# In re Modesto Adalberto MELO-Pena, Respondent

File A36 557 344 - Oakdale

*Decided February 20, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In bond proceedings under the Transition Period Custody Rules, the standards set forth in *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994), apply to the determinations of whether the alien's release pending deportation proceedings will pose a danger to the safety of persons or of property and whether he or she is likely to appear for any scheduled proceeding.

(2) The "is deportable" language as used in the Transition Period Custody Rules does not require that an alien have been charged and found deportable on that deportation ground. *Matter of Ching*, 12 I&N Dec. 710 (BIA 1968); and *Matter of T-*, 5 I&N Dec. 459 (BIA 1953), distinguished.

(3) The Transition Period Custody Rules do not limit "danger to the safety of persons or of property" to the threat of direct physical violence; the risk of continued narcotics trafficking also constitutes a danger to the safety of persons.

FOR THE RESPONDENT[1]: Kerry William Bretz, Esquire, New York, New York

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Harris Lee Leatherwood, Assistant District Counsel

BEFORE: Board Panel: HOLMES, FILPPU, and GUENDELSBERGER, Board Members.

HOLMES, Board Member:

This is a timely appeal from an Immigration Judge's February 14, 1996, bond redetermination decision denying the respondent's request for a change in custody status and ordering him detained without bond. The appeal will be dismissed.

The respondent, a 29-year-old native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident on July 22, 1978, when he was 11 years old. In this country, the respondent has accumulated a criminal history including convictions for two drug-trafficking offenses in 1987 and 1989. The respondent's convictions are substantiated by conviction documents in the file. He was charged with deportability for his

---

[1] Attorney Bretz's February 18, 1997, request to withdraw as counsel is granted.

1987 drug-trafficking offense as having been convicted of a controlled substance violation under section 241(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(B) (1994). In denying the respondent's request for a change in custody status, the Immigration Judge concluded that, while there were some equities presented, he was "not convinced that the respondent would refrain from any further criminal activity if he were released on bond." The record reflects that the respondent is currently detained in immigration custody.

In accordance with *Matter of Noble*, 21 I&N Dec. 672 (BIA 1997), the respondent's bond redetermination is now governed by the Transition Period Custody Rules ("transition rules") enacted during the pendency of the appeal by section 303(b)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-586 (enacted Sept. 30, 1996) ("IIRIRA"). *See also Matter of Valdez*, 21 I&N Dec. 703 (BIA 1997).

As a lawfully admitted alien, the respondent is eligible for release from immigration custody under the transition rules, provided he can satisfy the statutory dangerousness and flight risk requirements similar to those which were applied by the Immigration Judge below. *Matter of Noble, supra; see also Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994). Given that the inquiries are essentially the same, in reviewing the Immigration Judge's findings on flight risk and dangerousness to the community, we apply our aggravated felony bond case law as reflected in *Matter of Drysdale, supra. See Matter of Noble, supra,* at 687.

On appeal, the respondent makes three general arguments relating to the Immigration Judge's determination that he failed to rebut the statutory presumption of dangerousness to the community.

First, the respondent asserts that because he was not charged with deportation as an aggravated felon, he should not be required to rebut any presumption of dangerousness to the community as a prerequisite to a bond determination.

Second, the respondent argues that, even if it is presumed that he poses a danger to the community, the Immigration Judge erred in determining that this presumption had not been rebutted in this case. In this regard, the respondent indicates that the Immigration Judge gave the "overwhelming favorable factors" and supporting documentation only superficial consideration at best. As for the equities weighing in his favor, the respondent points to his long residence in this country, strong family and community ties as confirmed by documentation, and responsibility to support and care for his minor child who is ill.

Third, the respondent submits that the Immigration Judge gave undue weight in the bond analysis to his prior "three" drug convictions. As evidence that he is presently not a danger to the community, the respondent states that

he has never been convicted of a "violent" crime and has made rehabilitation efforts since committing the drug-trafficking crimes over 8 years ago.

We address in turn each of the respondent's arguments. First, it was the respondent's 1989 conviction for the drug-trafficking offense which brought him within the ambit of former section 242(a)(2) of the Act, 8 U.S.C. § 1252(a)(2) (1994), not the deportation ground under which he was actually charged. The respondent does not dispute that he was convicted of the 1989 drug-trafficking offense and therefore qualified as an aggravated felon as that term was defined in the Act. *See* section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1994); *see also* 8 C.F.R. §§ 242.2(c), (h) (1996). Nor does he dispute that the Immigration Judge advised him at the bond redetermination hearing that he faced the presumptions of dangerousness to the community and risk of flight.

The respondent is subject to similar presumptions of dangerousness and flight risk under the transition rules, even though he was never charged with deportability as an aggravated felon. The respondent's controlled substance deportation charge is one of the deportation grounds covered in the transition rules.[2] *See* section 303(b)(3)(A)(iii) of the IIRIRA. At a minimum, we find that evidence of the respondent's 1987 and 1989 drug-trafficking convictions is sufficient to bring him within the controlled substance deportation ground covered in the transition rules. *Id.; see also* section 101(a)(43) of the Act, *as amended by* IIRIRA § 321, 110 Stat. at 3009-627. In sum, we find that the Immigration Judge correctly found applicable the presumptions of former section 242(a)(2)(B) of the Act, and we find that these presumptions apply to the respondent's bond redetermination under the now governing transition rules.

---

[2] We are not satisfied that the meaning of the "is deportable" language in section 303(b)(3)(A)(iii) of the IIRIRA, a bond provision, is controlled by *Matter of Ching*, 12 I&N Dec. 710 (BIA 1968) (finding "is deportable" language for suspension of deportation purposes to require a charge *and* finding of deportability on that ground); or *Matter of T-*, 5 I&N Dec. 459 (BIA 1953). *Cf. Kimm v. Rosenberg*, 363 U.S. 405 (1960) (implicitly finding that "is deportable" language in section 19 of the 1917 Immigration Act does not require a charge of deportability); *see also Mullen-Cofee v. INS*, 976 F.2d 1375 (11th Cir. 1992). These prior Board decisions analyzed provisions involving eligibility for relief from deportation, issues which arise after a finding of deportation has already been made, in contrast to bond determinations which are normally rendered before any finding of deportability. Moreover, we note that it would be a Pyrrhic victory for the respondent (and lead to an absurd result) if we were to adopt a construction of the "is deportable" language in section 303(b)(3)(A)(iii) as requiring that the alien be charged with and found deportable as an aggravated felon. That is to say, if the respondent's aggravated felony convictions did not bring him within the scope of section 303(b)(3)(A)(iii), then they would render him subject to mandatory detention under section 303(b)(3)(A)(i) of the IIRIRA (covering aliens "convicted" of an aggravated felony for which there is no explicit authority to release under the transition rules). *Cf. Matter of Noble, supra,* at 682-85. It would be nonsensical to construe the law so as to bar the release of an alien convicted of an aggravated felony until he or she was charged and found deportable as an aggravated felon, but thereafter to allow for release on bond.

Second, the record reflects that the Immigration Judge considered the favorable factors presented by the respondent, including those substantiated by documentation. The respondent's family ties, long residence, and responsibility for his minor child have some relevance to the question of danger to the community, although this evidence is primarily relevant to the issue of flight risk. Despite the contention to the contrary, we find that the Immigration Judge gave proper weight to the favorable equities presented by the respondent in assessing whether he overcame the presumption that he posed a danger to the community if released pending deportation.

Third, the Immigration Judge gave appropriate weight in the bond analysis to the respondent's prior criminal record, including his 1987 and 1989 drug-trafficking convictions. We note that the transition rules do not limit "danger to the safety of other persons or of property" to the threat of violence. Distribution of drugs is also a danger to the safety of persons. The scourge on society of illegal drug trafficking and the associated criminal activity it generates is at this point beyond dispute. The record reflects that the respondent has served over 8 years in criminal incarceration for his 1987 and 1989 drug-trafficking offenses. He acknowledged at the bond redetermination hearing that he sold cocaine for 2 years. As the Immigration Judge noted, the respondent returned to drug-trafficking activities only shortly after being released from criminal incarceration for the 1987 offense. Particularly in view of his past history, the respondent's rehabilitation efforts during his last 7 years of criminal incarceration are not sufficient to overcome the statutory presumption of dangerousness to the community in this case. We agree with the Immigration Judge that, particularly given the respondent's recidivist criminal background, he has not rebutted the presumption that his release would pose a danger to the community by virtue of future narcotics trafficking.

**ORDER:** The appeal is dismissed.