# In re Hugo Antonio FORTIZ-Zelaya, Respondent

### File A90 681 195 - Arlington

*Decided March 18, 1998*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) An alien who is deportable under section 241(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(ii) (1994), as an alien convicted of two or more crimes involving moral turpitude, and whose deportation proceedings were initiated prior to the April 24, 1996, enactment date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), is not ineligible for a waiver under section 212(c) of the Act (to be codified at 8 U.S.C. § 1182(c)) unless more than one conviction resulted in a sentence or confinement of 1 year or longer pursuant to the former version of section 241(a)(2)(A)(i)(II), prior to its amendment by the AEDPA.

(2) For an alien to be barred from eligibility for a waiver under section 212(c) of the Act as one who "is deportable" by reason of having committed a criminal offense covered by one of the criminal deportation grounds enumerated in the statute, he or she must have been charged with, and found deportable on, such grounds.

FOR RESPONDENT: Jose Pertierra, Esquire, Washington, D.C.

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Scott M. Rosen, Appellate Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HURWITZ, ROSENBERG, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinion: FILPPU, Board Member, joined by HOLMES and VILLAGELIU, Board Members. Concurring and Dissenting Opinion: JONES, Board Member, joined by COLE, Board Member.

SCHMIDT, Chairman:

The respondent has timely appealed from the Immigration Judge's decision dated July 26, 1995, finding him deportable under section 241(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(ii) (1994), based on multiple criminal convictions, and ineligible for waivers of inadmissibility under sections 212(c) and (h) of the Act, 8 U.S.C. §§ 1182(c) and (h) (1994). The record will be remanded to the

Immigration Judge.[1]  The respondent's request for oral argument before the Board is denied. 8 C.F.R. § 3.1(e) (1997).

## I.  ISSUE

The issue in this case is whether amendments to sections 241(a)(2)(A)(i) and 212(c) of the Act, made by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (enacted Apr. 24, 1996) ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996) ("IIRIRA"), render the respondent ineligible for section 212(c) relief.

We note that section 212(c) of the Act has been amended by section 440(d) of the AEDPA, 110 Stat. at 1277, *as amended by* IIRIRA § 306(d), 110 Stat. at 3009-612, in part, to preclude relief for any alien who is deportable under section 241(a)(2)(A)(ii) based on convictions for multiple criminal offenses for which both predicate offenses are crimes involving moral turpitude as defined in section 241(a)(2)(A)(i). Section 241(a)(2)(A)(i) has also been amended by the AEDPA. AEDPA § 435(a), 110 Stat. at 1274.[2] We currently face the question of which version of the definition of a crime involving moral turpitude found in section 241(a)(2)(A)(i) should be applied in determining section 212(c) eligibility where the respondent is deportable pursuant to section 241(a)(2)(A)(ii).

## II.  SUMMARY OF FACTS

The respondent, a native and citizen of El Salvador, originally entered the United States in 1976 on a tourist visa. On October 26, 1989, he adjusted his status to that of a lawful permanent resident. On June 3, 1992, he was convicted in the General District Court for the State of Virginia, Fairfax County, of the offense of receiving stolen property, knowing such to be stolen, in violation of section 18.2-108 of the Virginia Code. He was sentenced to a term of 90 days' imprisonment, 88 days of which were suspended. The maximum sentence of imprisonment for this offense is 12 months.  On April 5, 1994, he was convicted in the Circuit Court for the State of Virginia, Fairfax County, of the offense of malicious burning (of an automobile) in violation of section 18.2-81 of the Virginia Code.  He was sentenced to a term of 4 years' imprisonment, 3 years of which were suspended.

On September 19, 1994, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221),

---

[1] Regarding the respondent's motion to allow late filing of an appellate brief, we have considered the explanations contained in same and accept the respondent's brief.

[2] Section 241(a)(2)(A)(i)(II) of the Act was revised and redesignated as section 237(a)(2)(A)(i)(II) of the Act by section 305(a)(2) of the IIRIRA, 110 Stat. at 3009-598, but that amendment does not apply to proceedings initiated prior to April 1, 1997.

charging the respondent with deportability pursuant to section 241(a)(2)(A)(ii), as an alien who has been convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct. At a hearing before an Immigration Judge on July 26, 1995, the respondent admitted the allegations contained in the Order to Show Cause and conceded deportability. The respondent sought to apply for waivers of inadmissibility pursuant to sections 212(h) and 212(c) of the Act.

The Immigration Judge found that the respondent was not eligible for a section 212(h) waiver, as he could not establish hardship to a United States citizen. Furthermore, the Immigration Judge found that the respondent was not eligible for a section 212(c) waiver because he had not been a lawful permanent resident for 7 years at the time of the hearing.

## III. ANALYSIS

During the pendency of his appeal, the respondent accrued the requisite 7 years for consideration of a section 212(c) waiver. Thus, we turn now to the respondent's current eligibility for relief under section 212(c). Because we conclude that this case should be remanded, we need not address the additional arguments raised by the respondent on appeal.[3]

### A. Statutory Changes to Section 212(c)

Following the respondent's hearing, the Act was amended to limit the availability of a waiver under section 212(c). The AEDPA created a bar to

---

[3] In its amended supplemental brief, the Service argues that the respondent's conviction for malicious burning bars him from applying for section 212(c) relief because that crime is an aggravated felony. Section 440(d) of the AEDPA eliminated the availability of section 212(c) relief to an alien who "is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii)" of the Act, which is the aggravated felony deportation provision. AEDPA § 440(d), *as amended by* IIRIRA § 306(d). We note that the respondent was not charged with deportability under section 241(a)(2)(A)(iii) of the Act as an aggravated felon, but rather as an alien who has committed two crimes involving moral turpitude pursuant to section 241(a)(2)(A)(ii). We find that in order for an alien to qualify as one who "is deportable" under the amendment to section 212(c), he or she must be charged with, and found deportable on, the requisite ground of deportability. *Cf. Matter of Gonzales-Camarillo*, 21 I&N Dec. 937 (BIA 1997) (finding that an alien who is charged with deportability as one convicted of an aggravated felony falls within the section 212(c) bar created by the AEDPA amendments); *Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997) (finding that an alien in exclusion proceedings is not one who "is deportable" within the section 212(c) bar created by the AEDPA amendments); *Matter of Melo*, 21 I&N Dec. 883 (BIA 1997) (finding that the "is deportable" language as used in the Transition Period Custody Rules dealing with bond determinations does not require that an alien have been charged with, and found deportable on, that deportation ground, and distinguishing cases involving relief from deportation); *Matter of Ching*, 12 I&N Dec. 710 (BIA 1968) (finding "is deportable" language for suspension of deportation purposes to require a charge and finding of deportability on that ground). Inasmuch as the respondent was not charged with deportability as an aggravated felon, he is not barred from section 212(c) relief as an alien who "is deportable" under section 241(a)(2)(A)(iii) of the Act.

section 212(c) relief to any alien who "is deportable by reason of having committed . . . any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)."  AEDPA § 440(d), *as amended by* IIRIRA § 306(d); *see also Okoro v. INS*, 125 F.3d 920 (5th Cir. 1997); *Matter of Soriano*, 21 I&N Dec. 516, 534 n.1 (BIA 1996; A.G. 1997).  That is, the AEDPA rendered ineligible for a section 212(c) waiver any alien who has two or more criminal convictions that are grounds of deportability as crimes involving moral turpitude, as set forth in section 241(a)(2)(A)(i)(II).

The AEDPA also modified section 241(a)(2)(A)(i) of the Act, which defined the types of crimes involving moral turpitude that render a person deportable. Prior to the AEDPA, section 241(a)(2)(A)(i)(II) covered offenses for which an alien was either actually sentenced to, or confined for, a period of 1 year or longer.[4] The AEDPA expanded that definition to include offenses "for which a sentence of one year or longer *may be imposed*." AEDPA § 435(a), 110 Stat. at 1274 (emphasis added).  Section 435(b) of the AEDPA, 110 Stat. at 1275, states that the "may be imposed" amendment made to section 241(a)(2)(A)(i)(II) "shall apply to aliens against whom deportation proceedings are initiated after the [April 24, 1996,] date of the enactment of this Act."

## B.  Analysis of Respondent's Section 212(c) Eligibility

In this case, the respondent was sentenced to 90 days' imprisonment for his first conviction and 4 years' imprisonment for his second conviction. If applicable, the AEDPA amendments to section 241(a)(2)(A)(i)(II) of the Act would preclude the respondent from section 212(c) eligibility, because each offense carried a possible sentence of 1 year or more. On the other hand, if the former version of section 241(a)(2)(A)(i)(II) applies, the respondent would be statutorily eligible for section 212(c) relief because he was sentenced to 1 year or longer for only one conviction. The question, therefore, is which version of section 241(a)(2)(A)(i)(II) of the Act should be relied upon to determine whether the section 241(a)(2)(A)(ii) predicate offenses are covered by the AEDPA bar.

On appeal, both the respondent and the Service assert that the former version of section 241(a)(2)(A)(i)(II) of the Act applies to cases, such as the respondent's, initiated prior to the AEDPA's effective date. Thus, the parties'

---

[4] The former version of section 241(a)(2)(A)(i) stated:

   CRIMES OF MORAL TURPITUDE.—Any alien who—

   (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of entry, and

   (II) either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer, is deportable.

position is that the AEDPA amendments do not bar the respondent from section 212(c) eligibility.

We reach the same conclusion. First, we note that section 435(b) of the AEDPA deals with the effective date of the "may be imposed" amendment made to section 241(a)(2)(A)(i)(II) of the Act. Section 435(b) states that the amendment "shall apply to aliens against whom deportation proceedings are initiated after the date of the enactment of this Act." We find this language plain and unambiguous. *See Matter of S-S-*, 21 I&N Dec. 900, 901 n.1 (BIA 1997). Consequently, we must accord the unequivocal meaning of the amendment. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

Second, there is no indication in the statute that the effective date in section 435(b) of the AEDPA was not intended to apply in instances where other sections of the Act reference section 241(a)(2)(A)(i). As noted, the AEDPA amendment to section 212(c) states that an alien is statutorily ineligible for relief under that section if he or she is deportable by reason of having committed any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are otherwise covered by section 241(a)(2)(A)(i). We see no reason not to apply the effective date in section 435(b) in determining which version of section 241(a)(2)(A)(i)(II) relates to aliens found deportable under section 241(a)(2)(A)(ii). Accordingly, we would apply the former version of section 241(a)(2)(A)(i)(II) to those aliens whose deportation proceedings were initiated before the AEDPA's effective date. Furthermore, we note that the courts of appeals for the Fifth, Seventh, and Ninth circuits have similarly held that for aliens whose deportation proceedings were initiated before the AEDPA's effective date, the former version of section 241(a)(2)(A)(i) applies when determining jurisdiction over final deportation orders under section 241(a)(2)(A)(ii). *Perez v. INS*, 116 F.3d 405, 408 (9th Cir. 1997); *Yang v. INS*, 109 F.3d 1185, 1193 (7th Cir.), *cert. denied sub nom. Katsoulis v. INS*, __ U.S. __, 118 S. Ct. 624 (1997); *Pichardo v. INS*, 104 F.3d 756, 758 (5th Cir. 1997).

Accordingly, we find that even under changes made to section 212(c) of the Act by the IIRIRA, the respondent is still eligible for relief under that section. The respondent's proceedings were initiated on September 19, 1994. Therefore, the amendment made to section 241(a)(2)(A)(i)(II) does not affect the respondent's case, which should be analyzed under section 241(a)(2)(A)(i)(II) as it existed prior to the AEDPA amendment; that is, we must determine whether both of the respondent's convictions resulted in a sentence or confinement of 1 year or longer. The records of conviction indicate that the respondent was sentenced to 90 days and confined for 2 days for receiving stolen property and was sentenced to 4 years and confined for 1 year for malicious burning. Consequently, as only one of the respondent's convictions resulted in a sentence or confinement of 1 year or longer, he is not statutorily barred by section 440(d) of the AEDPA from applying for a waiver under section 212(c) of the Act.

We cannot determine whether the respondent merits a favorable exercise of discretion, however, because the Immigration Judge found the respondent statutorily ineligible for section 212(c) relief and did not discuss his equities on the record. Under these circumstances, we find it appropriate to remand the record to the Immigration Judge for an examination of the respondent's equities and for the entry of a new decision. We express no opinion as to the outcome of those proceedings.

## IV. CONCLUSION

In conclusion, we find that because deportation proceedings were initiated prior to April 24, 1996, the respondent's conviction for two crimes involving moral turpitude should properly be analyzed under the definition of section 241(a)(2)(A)(i)(II) of the Act as it existed prior to the AEDPA amendment. The record will be remanded to the Immigration Judge.

**ORDER:**     The appeal is sustained and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

*CONCURRING OPINION*: Lauri S. Filppu, Board Member, in which Gustavo D. Villageliu and David B. Holmes, Board Members, joined

I respectfully concur.

I agree with the decision of the majority that the respondent's conviction for two crimes involving moral turpitude should be analyzed under the language of section 241(a)(2)(A)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(i)(II) (1994), as it existed prior to amendments made by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). I write separately, however, to more fully address the only issue in dispute between the parties: the interpretation of the phrase "is deportable" as it appears in section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* AEDPA § 440(d), 110 Stat. at 1277. The majority treats this contested issue in a footnote. This is a question over which the courts of appeals appear to be giving us conflicting direction in relation to identical statutory language affecting judicial review provisions. I believe it warrants greater attention.

Section 440(d) of the AEDPA eliminated the availability of section 212(c) relief for "any alien who *is deportable* by reason of having committed *any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).*" AEDPA § 440(d) (subsequently amended by IIRIRA § 306(d), 110 Stat. at 3009-612)(emphasis added). The phrase "is deportable" is the critical language in determining whether the

respondent falls within this bar. The majority has declared that he does not fall within this language because he was not charged with the specific aggravated felony ground of deportation, section 241(a)(2)(A)(iii) of the Act, that the Immigration and Naturalization Service now claims acts as a bar to relief. I concur for the following reasons.

At the outset, it is not apparent to me from the literal statutory language whether Congress meant to bar section 212(c) relief to criminal aliens who simply might be subject to deportation on one of the covered criminal grounds, if so charged, or only to those who actually have been charged on such grounds. The Service, moreover, has not identified any legislative history of section 440 of the AEDPA dealing with the "is deportable" language that helps to explain congressional intent. I find some guidance in resolving the ambiguity, however, in looking at the total package of changes made by section 440 of the AEDPA, and particularly at how those changes were woven into the fabric of the Immigration and Nationality Act as a whole. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) (stating that statutory language should be construed in harmony with the thrust of related provisions and with the statute as a whole).

The "covered criminal offense" language (italicized above) appears in five subsections of section 440 of the AEDPA. These subsections affect a wide range of actions, starting with the initial custody determinations that are made for newly detained aliens, and finishing with judicial review. Specifically, the "covered criminal offense" language, as inserted into various provisions of the Immigration and Nationality Act by the AEDPA: 1) directed the Attorney General to take custody of any alien "convicted of" a covered criminal offense;[5] 2) instructed the Attorney General to provide for the availability of proceedings at various correctional facilities for aliens "convicted of" covered criminal offenses;[6] 3) eliminated the availability of the section 212(c) relief at issue here for any alien who "is deportable" by

---

[5] Section 440(c)(1)(B) of the AEDPA, 110 Stat. at 1277, "Arrest and Custody," amended section 242(a)(2) of the Act, 8 U.S.C. § 1252(a)(2) (1994), to read:

> The Attorney General shall take into custody any alien *convicted of* any [covered criminal offense], upon release of the alien from incarceration, shall deport the alien as expeditiously as possible.

(Emphasis added.)

[6] Section 440(g)(1)(A) of the AEDPA, 110 Stat. at 1278, "Deportation of Criminal Aliens," amended section 242A(a)(1) of the Act, 8 U.S.C. § 1252a(a)(1) (1994), to read:

> IN GENERAL. — The Attorney General shall provide for the availability of special deportation proceedings at certain Federal, State, and local correctional facilities for aliens *convicted of* any [covered criminal offense]. Such proceedings shall be conducted in conformity with section 242 (except as otherwise provided in this section) . . . .

(Emphasis added.)

I note that section 440(g) of the AEDPA suggests an additional amendment to section 242(a) of the Act which appears to be misplaced.

reason of having committed a covered criminal offense; 4) endeavored to set a deadline for the actual deportation of any alien with a final administrative order who "is deportable" by reason of having committed a covered criminal offense;[7] and 5) restricted judicial review respecting a final deportation order against an alien who "is deportable" by reason of having committed a covered criminal offense.[8]

Thus, the amendments made by three of the subsections link the "covered criminal offense" language with the "is deportable" language, including the section 212(c) amendment now before us. All three of these provisions relate to stages in the deportation process at which a determination of deportability would be expected to have been made for practical reasons or would necessarily have been made. In the other two, sections 440(c) and 440(g), Congress linked the "covered criminal offense" language with the phrase "convicted of." These two changes pertain to aspects of the deportation process in which a determination of deportability would not normally be expected to have been made yet, such as bond proceedings.

Viewing the statutory scheme as a whole, therefore, it would seem from Congress' delineation of circumstances where an alien "is deportable" by reason of having committed a covered offense, as opposed to only having been "convicted of" a covered offense, that Congress was conscious of the distinction between those aliens charged with, and even found deportable on, a specific ground and those aliens not yet charged or found deportable. Congress could have used the "convicted of" language, or another similar phrase, consistently throughout section 440, if it had intended the fact of a criminal conviction alone to bring an alien within the terms of each of these amendments.

Given the logical pattern of the AEDPA legislative scheme and in the apparent absence of explanatory legislative history, the majority could reasonably conclude that Congress intended an alien to be charged with a relevant ground of deportability before falling within the "is deportable" language of section 212(c), as amended.

---

[7] Section 440(h)(2) of the AEDPA, 110 Stat. at 1279, "Deadlines for Deporting Alien," amended section 242(c)(2) of the Act by adding the following paragraph:

> When a final order of deportation under administrative process is made against any alien who *is deportable* by reason of having committed a [covered criminal offense], the Attorney General shall have 30 days from the date of the order within which to effect the alien's departure from the United States.

(Emphasis added.)

[8] Section 440(a) of the AEDPA, 110 Stat. at 1276-77, "Judicial Review," amended section 106(a)(10) of the Act, 8 U.S.C. § 1105a(a)(10) (1994), to read:

> Any final order of deportation against an alien who *is deportable* by reason of having committed a [covered criminal offense], shall not be subject to review by any court.

(Emphasis added.)

Assessing the "is deportable" language of section 212(c) in relation to the other amendments made by section 440 of the AEDPA is by no means a certain guide to congressional intent. And, I am troubled by conflicting court interpretations of the related jurisdictional provisions, by the seeming inconsistency in the use of the phrase "is deportable" in connection with a more recent, IIRIRA amendment to the bond and custody provisions, and by the regulatory availability of section 212(c) relief through applications filed directly with Service district directors who bring deportation charges against aliens but who do not make the deportability determinations entrusted to Immigration Judges.

In construing the identical "is deportable" language of section 440(a) of the AEDPA, relating to judicial review, two United States courts of appeals have taken a position different from the majority. *Mendez-Morales v. INS*, 119 F.3d 738, 739 (8th Cir. 1997); *Abdel-Razek v. INS*, 114 F.3d 831, 832 (9th Cir. 1997). Without meaningful explanation, these courts have found that this amendment, containing the identical "is deportable" language, barred judicial review for an alien who had not actually been charged on the basis of the "aggravated felony" ground of deportation that was held to bar court of appeals jurisdiction. These courts provide no significant analysis or reasoning to explain their results and, importantly, the case before us does not originate in either of these circuits. While these rulings give me pause, they lack an analysis that would suggest the error of our current reading of the statute.

In contrast, the United States Court of Appeals for the First Circuit has held that judicial review is not precluded by the AEDPA's section 440(a) amendments where the aggravated felony at issue did not serve as the basis of the deportability charge. *Choeum v. INS*, 129 F.3d 29 (1st Cir. 1997). That court reasoned that the Service could not, consistent with due process and the statutory and regulatory requirements governing its own proceedings, substitute new grounds for deportation, solely for the purpose of depriving federal courts of jurisdiction. As the court stated, "[A]t the core of [an alien's] due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard." *Id.* at 38 (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596-98 (1953); *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.), *cert. denied*, 502 U.S. 981 (1991)). While the ruling in *Choeum* is capable of different readings, its analysis and the court's final result support an interpretation that would require a charge (and a finding) of deportability based on a conviction, and quite possibly on a ground that falls within the "covered offenses" language of section 440(a) of the AEDPA.

A further reservation regarding congressional intent, in relation to the "is deportable" language, arises from the recent amendments to the bond provisions made by sections 303(a) and 303(b)(3) of the IIRIRA, 110 Stat. at 3009-585 and 3009-586. There, in the context of bond and custody determinations typically arising *before* rulings on deportability, Congress linked

together "covered criminal offense" and "is deportable" language similar to that found in section 440 of the AEDPA.[9]  For practical reasons, one would not expect to require a determination of deportability to have been made at the time of the initial bond and custody proceeding. *See Matter of Melo*, 21 I&N Dec. 883, at 885 n.2 (BIA 1997) (finding it both impractical and nonsensical to require a deportability ruling before a bond determination could be made). Thus, this use of the phrase "is deportable" in the bond context is inconsistent with my perception of what appeared in the AEDPA amendments to be a conscious understanding of where in the process a determination of deportability is normally expected. The construction we attached to the "is deportable" language in the IIRIRA bond context in *Matter of Melo, supra*, also argues in favor of a similar construction here, if for no other reason than to avoid having identical, or nearly identical, language bear different interpretations in different sections of the same statute.

But this very problem of assigning different meanings to identical language is already present as a result of *Matter of Melo, supra,* and *Matter of Ching*, 12 I&N Dec. 710 (BIA 1968) (construing "is deportable" for suspension of deportation purposes to require a charge and finding of deportability under the relevant deportation ground). The Service does not now claim that *Matter of Ching, supra*, was wrongly decided. Absent reconsideration of *Ching*, overall harmony in our construction of the phrase is impossible to achieve.

It may also be inappropriate to strive for a consistent reading of the phrase "is deportable" throughout the Act. Indeed, it is more likely that the better construction of the phrase will depend on, and therefore be gleaned from, the context in which it is used.  A quick look at the phrases "is inadmissible," "is deportable," and "is removable" (including negative phrasing), contained in various sections of the Act, as revised by the IIRIRA, yields no readily apparent uniform meaning. *See* sections 240(b)(2)(D), (c)(3)(A), (5)(A), (e)(2) of the Act (to be codified at 8 U.S.C. §§ 1229a(b)(2)(D), (c)(3)(A), (5)(A), (e)(2)); section 240B(a)(1) of the Act (to be codified at 8 U.S.C. § 1229c(a)(1)); *see also* section 239(d) of the Act (to be codified at 8 U.S.C. § 1229(d)) ("is convicted of an offense which makes the alien deportable"); section 240A(d)(1) of the Act (to be codified at 8 U.S.C. § 1229b(d)(1)) ("has committed an offense . . . that renders the alien inadmissible . . . or removable"); section 241(b)(3)(B) of the Act (to be codified at 8 U.S.C.

---

[9] For example, the Transition Period Custody Rules of section 303(b)(3)(A) of the IIRIRA read, in relevant part:

IN GENERAL.—During the period in which this paragraph is in effect . . ., the Attorney General shall take into custody any alien who—

. . .

(iii) is deportable by reason of having committed any offense covered in section 241(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of such Act . . . .

§ 1231(b)(3)(B)) (providing that restriction on removal for alien whose life or freedom would be threatened in country of removal, "does not apply to an alien deportable" for having assisted in Nazi persecution or genocide).

Accepting for the moment that the construction of the phrase "is deportable" will generally depend on context, the question remains whether the IIRIRA's placement of the "is deportable" language in a similarly structured bond provision signifies the construction Congress intended in the AEDPA. In the end, I find Congress' use of the term "is deportable" in subsequent IIRIRA bond amendments to be an uncertain guide for how we should treat the same language in the earlier AEDPA amendments. It may simply signify that the IIRIRA amendments were not as carefully meshed into the existing statutory structure as the AEDPA amendments, or that the relevant context warrants a different construction in each instance. And, given the overall structure of the AEDPA amendments, it appears Congress was well aware of the potential for some criminal aliens to seek section 212(c) relief in deportation proceedings, and less clear that Congress was aware of the availability of relief through applications made directly to Service district directors who do not make deportability determinations comparable to those made by Immigration Judges.

Most importantly, when I add together the reasoning of *Ching*, the concerns expressed by the First Circuit in *Choeum*, and the structure of the various subsections of the AEDPA's section 440, I am unwilling to depart from the majority's reading of "is deportable" in section 212(c), as amended. As far as district director jurisdiction is concerned, in *Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997), we ruled that the criminal bar to section 212(c) relief, containing the "is deportable" language, was not applicable to aliens in "exclusion" proceedings. That decision, and the sweeping changes made to the Act as a whole by the IIRIRA, severely restrict or eliminate the circumstances under which a district director of the Service might have occasion to address the "is deportable" clause in a section 212(c) request filed directly with the Service, particularly to the extent such applications have been deemed to arise in the functional equivalent of the "exclusion" context. *See* 8 C.F.R. § 212.3(a)(1)(1997). Thus, as was the case in *Matter of Ching, supra*, which dealt with suspension of deportation, the portion of section 212(c) now before us will typically become an issue only after a finding of deportability is made by an Immigration Judge, and only in those cases where the availability of section 212(c) relief was preserved by the IIRIRA. And, in the context of a deportation proceeding, a request for section 212(c) relief would not be needed by a lawful permanent resident, absent a determination of deportability. The majority's construction of the phrase, to require that the alien be charged with the requisite ground of deportability, would appear to be consistent with the reasoning that led to our ruling in *Ching* and not obviously inconsistent with district director jurisdiction over similar requests.

The majority's interpretation is also consistent with the "principle of con-struing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); s*ee also INS v. Errico*, 385 U.S. 214, 225 (1966); *Costello v. INS*, 376 U.S. 120, 128 (1964); *Barber v. Gonzales*, 347 U.S. 637, 642-43 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948).

We may not have seen the last of this question, especially given the case law respecting the closely related judicial review provisions. I see respect-able arguments for and against the majority's construction. But, at present and for the foregoing reasons, I concur with the majority's finding that the respondent remains statutorily eligible for section 212(c) relief as he has not been charged with, and found deportable under, the specific aggravated fel-ony ground of deportability currently advanced by the Service as the basis for barring relief at this time.

*CONCURRING AND DISSENTING OPINION:* Philemina M. Jones, Board Member, in which Patricia A. Cole, Board Member, joined

I respectfully concur in part and dissent in part.

I agree with the majority's decision that the respondent's conviction for two crimes involving moral turpitude is properly analyzed under the lan-guage of section 241(a)(2)(A)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(i)(II) (1994), as it existed prior to amendments made by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA").

I disagree, however, with the majority's conclusion that the respondent remains eligible for relief under section 212(c) of the Act, 8 U.S.C. § 1182(c)(1994), *as amended by* AEDPA § 440(d), 110 Stat. at 1277. Section 440(d) of the AEDPA eliminated the availability of section 212(c) relief for "any alien who is deportable by reason of having committed [an aggravated felony or other covered offense]." AEDPA § 440(d) (subsequently amended by IIRIRA § 306(d), 110 Stat. at 3009-612). Both the majority and concur-ring opinions conclude that the respondent does not fall within the "is deportable" language of section 440(d) because he was not charged with the specific aggravated felony ground of deportation which is now asserted by the Immigration and Naturalization Service as a bar to section 212(c) relief. I dissent for the following reasons.

The determinative language is the phrase "*is deportable by reason of hav-ing committed*" a covered offense. I find this language plain and unambigu-ous because it does not mention a charge or a finding of deportability. Where the language of a statute is clear, as it is here, the unambiguously expressed intent of Congress must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). If Congress intended

a charge and finding of deportability, the phrase would read "is found deportable," rather than simply, "is deportable." Consequently, I do not read the plain meaning of this phrase as requiring a charge and a finding of deportability.

My position is further supported by at least two United States courts of appeals which have construed the identical language of section 440(a) of the AEDPA as not requiring a charge and finding of deportability. *Mendez-Morales v. INS*, 119 F.3d 738, 739 (8th Cir. 1997); *Abdel-Razek v. INS,* 114 F.3d 831, 832 (9th Cir. 1997). These courts have held that this amendment barred judicial review for an alien who was convicted of a covered offense. In both cases, the alien was charged and found deportable on another basis, but based on the same conviction. Also, in both cases, the deportability hearing occurred prior to the effective date of the AEDPA amendments.

Moreover, I do not find my position inconsistent with the United States Court of Appeals for the First Circuit. The First Circuit has held that the Service may not substitute a new conviction and new ground of deportation, solely for the purpose of depriving federal courts of jurisdiction under AEDPA's section 440(a), where the new conviction never served as the basis for charging and finding the alien deportable. *Choeum v. INS*, 129 F.3d 29, 40 (1st Cir. 1997). The court distinguished this situation from one where the Service was merely attempting to charge the alien with an alternative legal ground of deportability based on the same conviction with which the alien was previously charged. *See id.* at 40 n.8.

I also note that allowing the Service to substitute a legal basis of deportability which did not exist at the time of the alien's conviction or deportation hearing does not violate established notions of due process. As the Attorney General noted in *Matter of Soriano*, Interim Decision 516 (BIA 1996; A.G. 1997), "[I]t is well settled that Congress may legislate to alter the immigration consequences of past criminal convictions or acts." *Id.* at 534 n.2 (citing *Mulcahey v. Catalanotte*, 353 U.S. 692, 694 (1957); *Lehman v. United States ex rel. Carson*, 353 U.S. 685, 690 (1957)).

Furthermore, I do not find that applying the new definition of aggravated felony to the respondent would have an impermissible retroactive effect. In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court set forth a method for analyzing whether the application of legislation had an impermissible retroactive effect. The Court found that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, . . . there is no need to resort to judicial default rules." *Id.* at 280. Here, we have clear language stating that the amendment to the aggravated felony definition applies to any conviction entered before, on, or after April 1, 1997, and that the amendment applies to any action taken on or after April 1, 1997. IIRIRA §§ 321(b), (c), 110 Stat. at 3009-628.

Inasmuch as this Board's review of an alien's appeal constitutes an "action," the respondent is subject to this revised definition. *See Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997) (finding that the Board's consideration of an Immigration Judge's certification of a case constitutes an "action").

I conclude that the respondent is statutorily ineligible for section 212(c) relief because he has been convicted of an aggravated felony under section 101(a)(43)(F) of the Act (to be codified at 8 U.S.C. § 1101(a)(43)(F)). Specifically, his conviction for malicious burning of an automobile constitutes an aggravated felony because it is a crime of violence for which the term of imprisonment is at least 1 year. *See Matter of Alcantar,* 20 I&N Dec. 801 (BIA 1994) (defining a crime of violence, in part, as an offense where physical force is used against the property of another). Accordingly, having concluded that an enumerated charge of deportability is not required under section 440(d) of the AEDPA, and finding that the respondent has been convicted of an aggravated felony, I find that he is statutorily ineligible for section 212(c) relief.

For the foregoing reasons, I would dismiss the respondent's appeal.